HALE *et al.*, appellees, *vs.* CHANDLER *et al.*, appellants.

To entitle a party to commence a suit by attachment in the Circuit Court, he must have a cause of action at the time he sues out his writ, and the amount due must be stated in his affidavit.

In this State, subsequent attaching creditors are not permitted to appear and defend a prior attachment suit, in the name of the absent debtor. Such creditors may, however, by bill in Chancery, contest the lien claimed by a prior attaching creditor, especially on the ground of fraud.

Where an act alleged in a bill of complaint to have been done, does not of itself import a fraud, a fraudulent intent must be charged; but no such averment is requisite, where from the statement of facts, fraud is plainly to be inferred.

Where the claim of a prior attaching creditor, due at the issuing of his writ, was less than $100, but he held another demand subsequently accruing, and afterwards took judgment for the amount of both, under his attachment,

Hale *et al.*, appellées, *vs.* Chandler *et al.*, appellants.

it was held (the creditor being advised of the claim of a subsequent attaching creditor) that his judgment was fraudulent, as to the latter; and the Court, without declaring said judgment void, postponed it to the lien of the second creditor.

Appeal from the Jackson Circuit, in Chancery.

The defendants, Chandler & Orr, on the 20th of October, 1852, had a demand against one Lockwood, amounting to about $403; of this, $304 50 was in a note not then due, and the balance was an account for goods sold, and was due. On that day, they sued out an attachment against the property of Lockwood, (who had absconded,) in the Jackson Circuit, claiming in their affidavit that there was due them, from Lockwood, $403 38. Under the attachment, a stock of goods belonging to Lockwood, appraised at $1269, was taken. No personal service was had on Lockwood. Subsequently, declaration was filed in the cause, upon both note and account, and judgment obtained for $409 98 damages, and costs of suit. On this judgment executions issued, and the defendants proposed to levy the same on the goods so attached. On the same 20th of October, but after the issuing and service of the defendant's attachment, the complainants sued out an attachment against Lockwood, and caused the same to be served on the same stock of goods, upon a debt due them from Lockwood. Lockwood had no other property besides these goods, and it was alleged in the bill that they would not sell for more than $600. The complainants filed this bill to restrain the defendants from selling the goods under their said execution, and asking to have the defendant's judgment, so far as it was founded on said note, vacated as against the complainants, or its payment postponed until their liens upon the said goods should be satisfied. The Circuit Court for the County of Jackson granted a decree pursuant to the prayer of the complainant's bill, from which defendants appealed to this Circuit Court.

Hale *et al.*, appellees, *vs.* Chandler *et al.*, appellants.

*Higby & Foote*, for complainants.

1. The issuing and levy of defendants' attachment was fraudulent as against complainants, whose debt was due, and who were subsequent attaching creditors. (*Adams* vs. *Paige*, 7 *Pick.* 542; *Whittier* vs. *Smith*, 11 *Mass.* 211; *Swift* vs. *Crocker*, 21 *Pick.* 241; *Fairfield* vs. *Baldwin*, 12 *Ib.* 388.) Defendants were not entitled to the writ until their debt was *due*, and it must have exceeded $100 above set offs. The Court acts in attachment cases, under its special statutory, not under its general jurisdiction. (*R. S.* 514, §§ 2, 4; *Buckley* vs. *Lowry*, 2 *Mich.* 418; *Galloway* vs. *Holmes*, 1 *Doug. Mich.* 330; *Greenvault* vs. *F. & M. Bank*, 2 *Ib.* 502; *Drew* vs. *Dequindre*, *Ib.* 93.)

It was not necessary to allege and prove a corrupt design on the part of defendants; it was enough that their acts operated to defraud complainants of a legal or equitable right. (*Loomer* vs. *Wheelwright*, 3 *Sandf. Ch. R.* 135; *Adams* vs. *Paige*, 7 *Pick.* 542.)

2. Defendants' judgment is not conclusive as to the extent and nature of their claim against the complainants, who were not parties or privies. It can be impeached for fraud. (*Smith* vs. *Saxton*, 6 *Pick.* 483; 1 *Greenl.* on *Ev.* §§ 522–3, 535–6, 541; *Jackson* vs. *Jackson*, 1 *J. R.* 424; *Candee* vs. *Lord*, 2 *Comst.* 269; *White* vs. *Carpenter*, 2 *Paige*, 217; *Kiersted* vs. *Avery*, 4 *Ib.* 9.)

*Walkers & Russel*, for defendants.

Judgments in attachment suits, where there is no notice to the defendant, are in the nature of a proceeding *in rem*, and bind the goods attached. (*R. S.* 516, § 523; *Boswell's lessee* vs. *Otis*, 9 *How.* 336.) In the affidavit it is not necessary to state that the indebtedness is *then* due and payable. (*R. S.* 514.) As to the meaning of "due," see Allen vs. Patterson, 3 *Seld.* 480; U. S. *vs.* State B'k of N. Carolina, 6 *Pet.* 29.

Nothing short of fraud or want of jurisdiction will author-ize this Court to go behind the judgment of a Court of Law. (*Shottenkirk* vs. *Wheeler*, 3 *J. Ch. R.* 277; *United States* vs. *Arredondo*, 6 *Pet.* 729; *Smith* vs. *Keen*, 26 *Maine*, 411; *Candee* vs. *Lord*, 2 *Comst.* 274; *French* vs. *Shotwell*, 5 *J. Ch. R.* 565; 6 *Ib.* 236; 2 *Lead. Ca. in Eq.*, 1 *pt.* 109.) And this applies to attachment cases also. ( *Voorhies* vs. *B'k U. S.*, 10 *Pet.* 473; *Deihl* vs. *Page*, 2 *Green. Ch.* 147.) There is no allegation whatever of fraud, without which complain-ants cannot obtain a decree. (2 *Lead. Ca. in Eq.*, 1 *pt.* 109; *Story Eq. Plea.* § 251; *Bein* vs. *Heath*, 6 *How.* 241.)

Complainants might, by leave of Court, defend the attach-ment suit in the name of the defendant. ( *Buckman* vs. *Buck-man*, 4 *N. H.* 319; *Webster* vs. *Harper*, 7 *Ib.* 594; *McCluny* vs. *Jackson*, 6 *Gratt.* 96.)

By the Court, WING, J.

It appears from the pleadings, that the defendants, Chand-ler & Orr, commenced a suit in attachment against Jeremi-ah Lockwood in the Circuit Court for the County of Jack-son, on the 20th day of October, 1852, upon two claims; one of which was a note of hand, executed the 8th day of June, 1852, and made payable to Chandler & Orr, or their order, for the sum of $304 50, six *months* from date; the other was a book account for the sum of $99. The note did not fall due until the month of December following; consequently, there was due to the defendants at the period when they sued out their writ, and had it levied on the goods of their debtor, only the sum of ninety-nine dollars; a sum not sufficient in amount to give the Circuit Court jurisdiction; for, besides the fact that Justices of the Peace have exclusive jurisdiction of all actions brought for the recovery of all sums of money less than one hundred dollars, the 4th sec. of chap. 114, title 24, (under which this action was brought,) expressly prohib-its an action in the Circuit Court, "unless, in the affidavit

to be attached to the writ, the amount stated as due to the plaintiff, over and above all legal set-offs, shall exceed the sum of one hundred dollars."

It is established by a uniform course of decisions in this Court, that to entitle a party to commence a suit in attachment, in the Circuit Court, he must have a present cause of action at the time he makes his affidavit, and sues out his writ; and that the amount *claimed to be due* must be stated in the affidavit. (*Galloway* vs. *Holmes*, 1 *Doug. Mich. R.* 330; *Drew* vs. *Dequindre*, 2 *Doug. Mich. R.* 93; *Buckley* vs. *Lowry*, 2 *Mich. R.* 418.) If, then, the affidavit attached to the writ sued out in this case, was made in conformity to the statute, the Circuit Court acquired jurisdiction of the cause. It was claimed by the complainants, on the argument in this Court, that the affidavit attached to the writ, was not sufficient to give the Circuit Court jurisdiction; but as the affidavit is not set forth in the proceedings, we cannot take notice of any supposed defects in it. The same remark will apply to objections made to the affidavit made by complainant, in his attachment suit. The defendant insists that as the Circuit Court had jurisdiction of the case, and of the property attached, and it being a proceeding *in rem*, all persons interested in the property, or whose rights might be affected by the judgment rendered in the cause, had the right to appear and defend; or at the least, they had the right to appear and move to dissolve the attachment; and therefore they are bound by the judgment, and cannot attack it in a suit of this character.

As a general proposition, no one is bound by a proceeding to which he is not a party; and to be a party in the sense in which the term is here used, he should be directly interested in the subject matter, and have the right to make defence or control the proceedings, and appeal from the judgment. It involves, also, the right to adduce testimony, and cross-examine the witnesses produced on the other side. Persons who

have not these rights, are regarded as strangers to the cause. An apparent exception to this rule is allowed, in cases usually termed proceedings *in rem*, which are binding and conclusive, not only upon the parties actually litigating in the cause, but all others. The reason of this is, that every one who can be affected by the decision, has the privilege of appearing and asserting his own rights, by becoming an actual party to the proceedings; or is represented in the action. (*Greenl. Ev.* §§ 523, 252.)

It has never, to my knowledge, been claimed that a suit in attachment, under the special provisions of our statute, is a proceeding *in rem*, strictly speaking. It has been likened to such proceeding, because it is more like that than any other, as a lien upon the property of a debtor is acquired by the levy of an attachment upon it; but it also combines with it a common law action, and the defendant is required to be summoned to appear personally, at a time to be named in the writ; and if he does appear, the case proceeds to judgment in the same manner as any other suit at common law. There is no provision in the statute which expressly authorizes any other persons besides those named in the writ to appear and defend the suit, or to defend in the name of the defendant, on their own motion. The statute does not appear to contemplate an interference in the suit by a third person. The plaintiff named in the writ alone recovers judgment against the defendant, and no one but the plaintiff can participate in the proceeds of the judgment, except by a separate and independent proceeding of his own. It may readily be conceived, that by collusion between the plaintiff and the defendant, the rights of third persons may be prejudiced, unless they should be permitted to defend. In Massachusetts, third persons who are subsequent attaching creditors, are by an express provision of the statute, permitted to defend their rights in the name of the defendant. In the courts of New Hampshire, subsequent attaching cred-

itors have been permitted to suggest to the Court that the suit is prosecuted by collusion between the parties, for the purpose of defrauding the creditors of the defendant, and that there is in fact nothing due from the defendant to the plaintiff, and upon security being given by the creditors to the plaintiff to pay all such costs as the Court should order on account of their interference in the suit, the Court orders that the plaintiff make his election to dissolve his attachment, or consent to try the question whether his suit in attachment is collusive, in an issue between him and the creditors. In the case of Buckman *vs.* Buckman, 4 N. H. 319, the Supreme Court speak of this as the settled practice of their Court. They say that by giving security, the creditors were permitted to defend in the name of the defendant, and if the plaintiff prevailed, he would have his remedy for costs upon the security given, and if the creditors prevailed, they would be entitled to execution in the name of the defendant for his costs. In the case of Webster *vs.* Harper, 7 N. H. 594, this doctrine is again stated and approved. In McCluny & Co. *vs.* Jackson, 6 Gratt. 96, a subsequent attaching creditor claimed the right to appear in the cause and make defence, and as a subsequent attaching creditor to claim the property attached, and to introduce witnesses and cross examine the witnesses of the plaintiff, for the purpose of showing that the debt claimed by the plaintiff had been paid. The Court allowed him the privilege claimed. By the statute of Virginia, goods are released from the attachment by appearance and putting in bail, and in Smith *vs.* Pierce, 6 Munf. R. 585, it was held that a third person might put in bail and have the property released, and the defendant in attachment, though he did not appear, might, upon such bail being entered, appear by his attorney and plead issuably. By another provision of the Revised Code of Virginia, in all cases of attachment the defendant is permitted to make defence, and any other person claiming the

property may interplead without giving bail, but the property attached is not thereby released. Upon the authority of the case of Smith *vs.* Pierce, the Court say (in the case of McCluny *vs.* Jackson) that "as defence for the defendant could be made without personal appearance, they could see no good reason why a third person claiming a right to have his debt satisfied out of the attached property, should not be permitted to make it either in the name of the debtor or in his own name. He cannot interplead as the claimant of the property in his own right, because he is seeking to subject it to the payment of his debt as the property of another. The debtor is a fugitive, and unless the subsequent creditor is permitted to make defence, a claim which he could show to be unjust, might consume the whole estate, and the real creditor would be without remedy. Such a construction would violate the spirit of the act which authorizes the defendant to make defence without giving bail. The reason and necessity for extending the privilege to third persons, seeking the payment of their debts out of the attached property, are stronger than for permitting third persons to give security and release the property. The plaintiff has a better security against a creditor than against a fugitive for his costs."

The statute of this State directs that the property attached shall remain in the hands of the officer, unless the defendant or any other person in whose possession such property may have been found, shall, before judgment in the suit, deliver to the officer a bond, either with or without such defendant, or other person, to the satisfaction of such officer, with such a condition as is provided in sec. 14; and thereupon the property is to be delivered to the defendant, or the person in whose possession it is found. By sec. 21, any defendant not served with the attachment, may appear at any time before judgment, upon such terms as the Court may deem reasonable.

It appears, from a comparison of our statute with the stat-

ute of Virginia, that they are very similar in their provisions; and we think that the practice which prevails in New Hampshire, Massachusetts and Virginia, of admitting subsequent attaching creditors to appear in the prior suit, and defend in the name of the absconding debtor, would be unobjectionable; but we do not feel at liberty by our decision, to change the practice which has hitherto prevailed in this State, and is deemed to be well settled. To remedy, however, the supposed hardships of the law, and the practice under it, in this respect, it may be deemed advisable to change the practice by a rule to be adopted by this Court.

Our only object in considering this question has been to ascertain whether the complainants were bound to appear in the prior attachment suit, or whether their position, in any respect, was such, that they were bound by the judgment rendered in that cause. We think, if they could have been admitted upon their application, to defend in the name of the defendant, or otherwise, it was not a matter of right; and such a privilege, if granted, could only be considered as cumulative to their right of action in the present form. In Massachusetts, the right of the subsequent attaching creditor to appear and contest the claim of a prior attaching creditor, though it be expressly given by statute, is held to be a cumulative remedy, and does not preclude other remedies. ( *Whitcomb* vs. *Williams*, 4 *Pick.* 230; *Fairfield* vs. *Baldwin*, 12 *Ib.* 388; *Adams* vs. *Paige*, 7 *Ib.* 547.) We are therefore of the opinion that the complainant is authorized to pursue the remedy he has chosen, and contest the validity of the lien which the defendants claim to have acquired by their prior attachment and judgment, and particularly on the ground of fraud.

In Fairfield vs. Baldwin, 12 Pick. 388, the plaintiff commenced a suit in attachment, and his writ was levied upon the goods of defendant. Other creditors of the same defendants had previously levied their attachments upon the same goods;

plaintiff notified the Sheriff that he should contest the validity of the prior attachment. Only one of the prior attachment suits was tried, and at the trial, the plaintiff was permitted to amend his declaration, and insert new counts upon new cases of action. He obtained judgment for all his claims, and issued execution; when the present plaintiff again notified the Sheriff, that he should contest the validity of the judgment; but the Sheriff proceeded to sell the goods, and applied the proceeds upon the execution. And when the plaintiff recovered judgment, and issued his execution, the Sheriff returned it wholly unsatisfied; thereupon, the plaintiff brought this action against the Sheriff. At the trial, it was insisted that the plaintiff was precluded from maintaining his action, as he had been permitted to appear and defend in the prior action; but this objection was not sustained. It appeared on the trial that the plaintiff in the prior suit had introduced in evidence notes which had been executed after the commencement of his suit, but which were antedated. The Supreme Court held that by the introduction of new causes of action, and fraudulent changes of the notes upon which the judgment was obtained, the attachment was vacated, and that, too, as to the good claims described in the original declaration. The Court say that though the plaintiff, in the prior suit, had good claims to a small amount, and fraudulently brought forward claims to a large amount, which were not due, this fraud corrupted and destroyed the whole. To the same effect, is the decision in Swift *vs.* Crocker, 21 Pick. 241. In this latter case, the Court held the proceedings in attachment void as to the demands not due, at the time of the commencement. This was a decision in the original attachment suit. In Peirce *vs.* Patridge, 3 Metc. 44, the defendant in attachment submitted to a judgment by default, and the creditor took judgment for the whole amount of his claim, without deducting therefrom the amount received by him of the debtor, in part payment of his claim, and after an ac-

count had been stated between them, showing the true balance. The judgment was held void in toto, as against other attaching creditors of the same debtor, in an action against the Sheriff, who had notice for a misapplication of the money upon the execution, on the first judgment. The Court held that it was manifestly fraudulent for a party thus to take money which did not belong to him, and thus defeat the claims of a fair creditor. Though this transaction is not in terms called fraudulent, yet, in the opinion of the Court, it is expressly said that the evidence seemed to them fully to establish the facts necessary to bring the case within the principles alluded to, and which were applied in the case, in Fairfield vs. Baldwin.

In Felton vs. Wadsworth, 7 Cush. 587, an attorney inadvertently, and without the knowledge of his client, took judgment and sued out execution for an amount known by his client to be more than was really due to him; and on discovering the mistake, the attorney went to the Sheriff, and directed him to collect only the amount actually due. The Sheriff refused to receive any instructions, and would not collect any amount upon the execution. In an action against him by the attachment creditor, his defence was, that the attachment was vacated by taking judgment for too large a sum. The Supreme Court held that the mere fact of taking judgment for too much, did not dissolve the attachment. They say, to have that effect, fraud must be an essential element in the case. (See Webster vs. Harper, cited above.)

The principle upon which the judgments were declared void, in the cases we have been considering, is, that they were fraudulent, and were made the means of defrauding others. The executions were set aside in these cases, to prevent their being used under the form of law, as the instruments of wrong and injustice.

It is argued by the defendants, that " even if fraud is relied upon, there are not only no distinct allegations of fraud, but

no allegations whatever; and without this the complainant cannot obtain a decree."

The bill contains a detailed statement of facts, which are admitted, and which show that the defendants commenced their suit upon claims the greater part of which were not due, and proceeded to take judgment and issue execution thereon, and advertise the property attached for sale. It is true, that in describing their several acts and proceedings, a distinct charge of a fraudulent purpose is not added, no distinct imputation in terms of fraud is added; but after stating the facts, the general charge is made that "the proceedings of the said Zachariah Chandler and Edward Orr in the premises, and the said judgment and execution thereon, are in manifest fraud of the rights of your orators, and are calculated to embarrass, hinder and delay your orators in the collection of the moneys due and owing from the said Jeremiah Lockwood to them, as aforesaid." There is no charge that they knew at the time of suing out the attachment that other persons had claims against their debtor, and therefore, in swearing by their attorney to an indebtedness when the claim was not due in the sense of the statute, it may be they did not intend to do anything morally wrong, at least so far as other creditors were concerned, but in the subsequent proceedings in the cause, fraud clearly appears. If at the time the affidavit was sworn to, the defendants are not shown to have had information of any other claims against their debtor, yet at the time the judgment was obtained the defendants were advised of the claims of complainants. Notice of their attachments had been published in the newspaper of the village where the attorney of the defendants resided, and where the court was held, and the complainants attempted to interfere in the suit to prevent the defendants from obtaining judgments, and to protect their own rights; and the complainants' attachments upon the same property were pending in the same Court. With a knowledge of these facts, the de-

fendants, by their attorney, intentionally took judgment for the amount of the claims upon which their attachment suit was commenced. At the time they commenced their suit they had no claim upon which they could maintain a suit in the Circuit Court, and consequently they were not entitled to a lien upon the goods of their debtor, which should have precedence over the liens obtained by the complainants, by means of their subsequent attachment suits; and by prosecuting their claim to judgment they must have intended to perfect their supposed prior lien, and by suing out execution upon the judgment thus obtained, they must have intended to withdraw the money to be raised by the officer upon a sale of the goods attached, from the subsequent attaching creditors, who were entitled by their lien to have it applied in payment of their debt. It was clearly fraudulent for the party thus to take money which they knew did not belong to them, and thus defeat the claims of creditors whose lien had precedence of theirs. The necessity for charging that an act was done with a fraudulent intent, where the act charged to have been done does not import a fraud, is very plain; but here we have a statement of facts from which fraud in fact is plainly to be deduced, and therefore need not be averred in terms, and proved as a matter of intent connected with the act, especially where the relation of facts is followed with an averment, as in this case, of the effect of such proceedings.

If we are right in our views and conclusions in this case, it will not be necessary to declare the judgment obtained by the defendants to be void, the rights of the complainants will be protected by postponing the lien of the defendants to the liens obtained by the complainants. It is competent for a Court of Chancery to do this, leaving the judgment obtained by the defendants in full force as against the defendant in attachment. (*Smith* vs. *Saxton*, 6 *Pick.* 483; *White* vs. *Carpenter*, 2 *Paige*, 217; *Kiersted* vs. *Avery*, 4 *Ib.* 9.)

As this has been done by the Circuit Court, and as we find no error in the decree of the Circuit Court, its decree must therefore be affirmed.