MARTIN AND OTHERS, Appellants, v. MICHAEL AND OTHERS, Respondents.

1. A creditor at large, who has commenced suit by attachment for his debt, but has not obtained judgment therefor, is not entitled to invoke the equitable interference of the courts to annul judgments fraudulently confessed by his debtor in favor of other persons, or to restrain by injunction the disposal of the debtor's property through the means of executions issued on such confessed judgments.

*Appeal from St. Louis Court of Common Pleas.*

Application for an injunction and restraining order. The petition alleges that the plaintiffs, Wm. R. Martin and Charles G. Martin, are partners, composing the firm of Martin & Brother. The other plaintiffs compose three other firms, under different styles, all of which are set out in the petition.

The petition further alleges that on the 12th day of August, 1854, said Wm. R. and Charles G. Martin instituted suit, by attachment, against the defendants, Samuel and Isaac Michael, who composed the firm of S. & I. Michael, to recover a debt due from said S. & I. Michael to said Martin & Bro. ; that af-

terwards, on the same day and a few days subsequently, other attachment suits were commenced by other of the plaintiffs against said S. & I. Michael, to recover debts due from the latter to the firms which they composed respectively; that on the 11th day of August, 1854, the said Samuel and Isaac Michael confessed judgments for different amounts in favor of each of their co-defendants, excepting defendant Wimer; that on the same day, executions were issued upon said judgments, placed in the hands of said defendant, Wimer, who was then sheriff of St. Louis county, and by him levied upon goods, wares and merchandise belonging to the said S. & I. Michael; that the said writs of attachment were levied by the sheriff, as they came to his hands respectively, upon the same goods, wares and merchandise which had been seized under said executions; due service of the summons having been made in each case upon said Samuel and Isaac Michael; that said goods, wares and merchandise were all the property said Samuel and Isaac Michael owned; that the sheriff had (previous to the filing of this petition) advertised and sold the same, and at the time of the filing of this petition had the proceeds of said sales in his hands.

The amount of the several executions largely exceeded the amount of the proceeds of said sales in the hands of the sheriff.

The petition further alleges that on the 11th day of August, 1854, the said Samuel & Isaac Michael also executed and delivered to the defendants, Henry N. Hart and Joseph Jecko, a deed of assignment, purporting to be a general assignment for the benefit of the creditors of said S. & I. Michael, but which was never assented to by plaintiffs; nor did any thing pass to said assignees by operation of said deed, inasmuch as the whole of the property of said S. & I. Michael had been previously seized by said sheriff under said executions.

The petition then states that said confessions of judgments were voluntary, without consideration, fraudulent, and contrived by said S. & I. Michael and their co-defendants (except said Wimer) colluding together with the fraudulent intent of

hindering and delaying their creditors, and of enabling said S. & I. Michael to obtain ready money by means of said sales under said executions, in fraud of the *bona fide* creditors of said S. & I. Michael; that said assignment was also made with the fraudulent intent of blinding and deceiving the *bona fide* creditors of said S. & I. Michael; that the plaintiffs are *bona fide* creditors of said S. & I. Michael; that in the matters aforesaid said defendant, Wimer, acted in obedience to the process in his hands and the directions of his co-defendants; that said Wimer still has the proceeds of said sales in his hands, and that said S. & I. Michael are wholly insolvent, and have no property or effects upon which execution or attachment could be levied, excepting said proceeds of said sales.

The plaintiffs allege that they are remediless unless the said moneys in said sheriff's hands can be applied to said debts due them as aforesaid, and pray that said confessions of judgment may be annulled, said executions quashed, and that the defendants be restrained from collecting and the sheriff from paying over said proceeds of said sales to his co-defendants, or either of them, and for general relief.

Upon this petition, a temporary injunction issued in conformity with the prayer of plaintiffs.

To this petition (the substance of which is set forth above) defendants demurred. James Michael, one of defendants, demurred on the following grounds: "1st. The petition does not state facts sufficient to constitute a cause of action, or to entitle plaintiffs to the judgment or relief prayed therein against this defendant; 2d. The plaintiffs can not lawfully maintain this suit jointly against this defendant; 3d. The plaintiffs can not lawfully maintain this suit against the defendants jointly; 4th. There is a misjoinder of parties plaintiff; 5th. There is a misjoinder of parties defendant; 6th. The plaintiffs have no joint interest in the subject matter of the suit; 7th. The defendants have no joint interest in the subject matter of the suit; 8th. Plaintiffs are not lawfully entitled to have the said judgment in favor of this defendant or the executions thereon an-

nulled, vacated or set aside ; 9th. The court can not lawfully control the said funds in the hands of defendant, Wimer, as prayed in the petition."

The other defendants filed a joint demurrer, assigning the same causes of demurrer. The court sustained said demurrers and dismissed the petition. Plaintiffs appealed.

*Krum & Harding, Biddlecome* and *B. A. Hill,* for appellants.

I. As to the joinder of plaintiffs, the demurrer was not well taken. The general rule in equity is, that all parties who are interested in the subject and object of the suit, may be joined as plaintiffs. (Adams Eq. 314.) The subject of the suit in this case is the property of the debtors, and the object of it is to prevent a fraudulent disposition of it. This view is aided by the practice act of 1849, art. 3, sec. 5. As to multifariousness, see Oliver v. Piatt (3 How. U. S. 411).

II. As to the joinder of defendants, the demurrer is not well taken ; for, though the sheriff is not implicated in the fraud, yet he is a necessary party, as being the custodian of the party and the innocent instrument of his co-defendants in carrying out the fraudulent act which they are charged with having combined to commit. The combination charged is sufficient to authorize the joinder of the latter.

III. The petition shows that the plaintiffs are severally creditors of S. & I. Michael, two of the defendants. The plaintiffs severally sued out attachments which were levied upon the property in question. This property is alleged to be *all* that S. & I. Michael possess ; that they are insolvent, and that the defendants have combined together to make such fraudulent use of legal process as will, unless prevented by aid of a court of equity, destroy the benefit to plaintiffs of the levy made under their attachments. The main ground upon which the demurrer was sustained was, that plaintiffs were creditors at large, and had not exhausted their legal remedy by obtaining judgment and execution. The appellant maintains that this ground was not well taken. The petition is not a creditor's bill, nor are

the principles which make it necessary that the debt shall have been ascertained and fixed by judgment, and that the execution shall have been issued and returned *nulla bona*, before a creditor's bill can be sustained, applicable to the case. The plaintiffs do not here seek the *satisfaction* of debts out of property not subject to levy. They do not pretend to have exhausted their legal *remedy*. They ask that the court will remove an obstacle which the defendants have fraudulently thrown in the way of the complete execution of legal process, issued for their benefit, and they pray for this relief in order that said legal process may be completely executed. As directly in point in respect to the plaintiffs' right to such relief, we cite Tappan v. Evans (11 N. H. 311, p. 327). The appellants also refer to the above citation as showing the distinction to be made between an endeavor on the part of the creditor to reach equitable property of the debtor, and the attempt to remove an obstruction to a levy upon or sale of property which is subject to execution. The plaintiffs pray for the exercise of the ancillary power of the court to aid in the execution of legal process.

IV. Our process of attachment is a lien upon property from the time of levy. This lien stands on as high equitable ground as a conveyance. (See Carter v. Champion, 8 Conn. 549, at p. 559.) It would have precedence of a subsequent *bona fide* conveyance and of a previous fraudulent conveyance.

V. The sheriff, having in his possession a fund which his co-defendants claimed by virtue of one class of liens, and the plaintiff by another and a conflicting class of liens, may be regarded as standing in the position of a trustee, and in such case plaintiffs could maintain their bill before obtaining judgment. (See Grosvenor v. Austin, 6 Ohio, 103.)

*S. Reber*, for respondent.

I. A creditor at large, although he has brought suit on his debt, has no standing in a court of law or equity to contest the validity of a judgment confessed by his debtor in favor of another party. (Higgins et al. v. Armstrong, et al., 2 Johns. Ch. 144; Brinkerhoff v. Brown, 4 ib. 671; Witringham v.

Witringham, 20 Johns. 296 ; Melville v. Brown, 1 Harrison, 363.) A judgment creditor must sue out execution before he can resort to a court of equity for relief. (Brinkerhoff v. Brown, 4 Johns. Ch. 671.)

II. An attachment creditor is a creditor at large, within the meaning of the first proposition. (Melville v. Brown, 1 Harrison, 363.) An attachment creditor has no *lien* on the property attached. (Ib.) The goods attached are in the custody of the law, and the officer has no right to hold them after the death of the defendant. (Austin v. Wade, Pennington, 727 ; Sweringen v. Eberius, 7 Mo. 420.) In the case at bar, the goods were in the hands of the sheriff by virtue of prior process.

III. But if attaching creditors were allowed the same standing in court as judgment creditors, still the plaintiffs in this suit could not maintain their action, because the second attachment of Martin & Bro. was not levied on the goods of S. & I. Michael or their proceeds, but was served by sheriff Maddox, by summoning Wimer, his predecessor in office, as garnishee. And there is no pretence that such garnishment creates a lien on the effects in the hands of the ex-sheriff.

IV. There is a misjoinder of plaintiffs. They not being judgment creditors, the defendants have the right to put in issue the validity of the claim of each, and thus the questions to be tried may be so numerous and diverse as to confound both court and jury, destroy the simplicity and certainty that ought to characterize judicial proceedings, and sacrifice the rights of parties.

V. There is a misjoinder of defendants. Each defendant has his own rights to maintain, and has nothing to do with the debts or claims of his co-defendants. Each defendant has a right to stand on the merits of his own cause and to fight his own battles.

VI. The petition is defective for not stating on what ground the attachments were sued out. As the defendants have a right to contest the claims of the plaintiffs against S. & I. Michael, they have a right to know upon what specific ground the plain-

Martin v. Michael.

tiffs base their right to seize the property of the said Samuel and Isaac, otherwise they can not defend themselves.

LEONARD, Judge, delivered the opinion of the court.

In Wiggins and others against Strong and others, (2 Johns. Ch. R. 144,) Chancellor Kent said: "This is the case of a creditor on simple contract, *after an action commenced* at law and *before judgment*, seeking to control the disposition of the property of his debtor under judgments and executions on the ground of fraud. My first impression was in favor of the plaintiffs, but, upon examination, I am satisfied that a creditor at large, and before judgment and execution, can not be entitled to the interference which has been granted in this case. In Angell v. Draper, (1 Vern. 399,) and Shirley v. Watts, (3 Atk. 2,) it was held that the creditor must have *completed* his title *at law, by judgment and execution*, before he can question the disposition of the debtor's property; and in Bennett v. Musgrove, (2 Vern. 51,) and in a case before Lord Nottingham, cited in Batch v. Wastoll, (1 P. W'ms, 445,) the same doctrine was declared; and so it is understood by the elementary writers. (See Mitford, 115; Coop. Eq. Pl. 149.) The reason of the rule seems to be, that until the creditor has established his title, he has no right to interfere, and it would lead to an unnecessary and perhaps a fruitless and oppressive interruption to the exercise of the debtor's rights. Unless he has a *certain* claim upon the property of the debtor, he has no concern with his frauds. On the strength of settled authorities, I shall accordingly grant the motion for dissolving the injunction." Afterwards, in Wintringham v. Wintringham, (20 Johns. Rep. 296,) the same doctrine was recognized and acted upon by the Supreme Court of New York, and we are not aware of any case, anywhere, in which it has been held otherwise.

An attaching creditor stands on no better ground than one who sues by the ordinary process of the court. The reason of the rule is equally applicable to both classes of cases; and so

it was expressly decided in the Supreme Court of New Jersey, in Melville v. Brown, (1 Harrison, 367.) Let the judgment stand affirmed.