LINN (ROGERS v.). See Case No. 12,015.

---

## Case No. 8,375.

### LINN et al. v. SMITH.

[4 N. B. R. 46 (Quarto, 12); [1] 3 Am. Law T. 218; 1 Am. Law T. Rep. Bankr. 229; 2 Leg. Gaz. 299.

### Circuit Court, E. D. Michigan. 1870.

#### BANKRUPTCY—PETITION—CLAIM NOT DUE.

1. A creditor can file a petition against his debtor even though his claim is not due.

2. If the debts are provable under the act they are such as the act contemplates as sufficient on which to base a bankruptcy petition.

[Cited in Re Stausell, Case No. 13,293.]

3. The act surely does not contemplate such inequality as there would be in precluding a creditor holding notes to amount of ten thousand dollars from the right to petition, when one holding an open account to amount of two hundred and fifty dollars is allowed to have the debtor declared a bankrupt if he has been guilty of the acts prescribed as acts of bankruptcy.

[Appeal from the district court of the United States for the Eastern district of Michigan.]

[In the matter of Alexander R. Linn and others against Loring M. Smith.]

A. Russell, for appellant.
Don M. Dickinson, for appellee.

EMMONS, Circuit Judge. The act of bankruptcy having been traversed, the matter was tried before a jury in the district court, before his honor, Judge Withey. Two objections are argued in this court: (1) That the petition alleged a debt which was due and payable, and there was a variance between it and the evidence. (2) That as the debt was not due when the petition was filed it cannot be sustained. The 39th section of the act [of 1867 (14 Stat. 536)], provides that creditors whose debts are provable under the act may petition, and section 19 authorizes debts not due to be proved. The 32d section discharges the bankrupt from all debts which are provable. Literally construed, these provisions are wholly unambiguous, and authorize a creditor whose debt is not due to become a petitioner. The consequences, too, of a different construction would seem clearly to justify this rendering of the law. Unless such a creditor can petition he cannot, before the maturity of his debt, become a party in any other form, and the injustice will result of discharging a citizen's debt by proceedings which he can neither originate nor

1 [Reprinted from 4 N. B. R. 46 (Quarto, 12), by permission.]

aid in controlling. The petition must be filed within six months from the commission of the act of bankruptcy, and a fraudulent preference made more than four months before the petition cannot be defeated. If, therefore, an immature demand will not authorize a proceeding, every creditor whose debts do not fall due within this period may be wholly deprived of all the protection intended to be secured. In numerous instances the fraudulent debtor would be without restraint. Other equally impolitic results might be stated, rendering it, in the last degree, improbable that the lawmakers intended to deny a creditor who held a debtor's note for ten thousand dollars, due in one year, the liberty of petitioning, while he who had an open account of two hundred and fifty dollars, because no credit was agreed upon, was allowed to do so. It is claimed this reading is erroneous, and an argument of much learning and plausibility was made. The common conviction of the bar that the debt must be due was appealed to, the analogies in proceedings at law for the collection of debts, and the construction put upon the old English bankrupt laws were much relied on. Mr. James and Mr. Hilliard, in their commentaries on the statute both fully sustain the position of the appellant. Hil. Bankr. p. 184, says: "A future debt is held no ground for a petition. No action can be commenced upon it, much less can there be a commission of bankruptcy taken out upon it, whereby, as it were, all the property of the bankrupt is seized in execution." James, Bankr. p. 265, says, the clause authorizing debts provable to be the subject of petition is satisfied by making it refer solely to the nature of the debt. That is, it must not be for a tort, or of such a nature as not to be provable. These books, issued soon after the publication of the law, are, in all probability, the source of the professional conviction which has been appealed to by counsel. The reason given for the reading of Mr. James is quite insufficient. It never would have occurred to any lawmaker that courts, by a far-fetched judicial construction, would authorize a petition by parties whose debts were neither provable for a dividend nor discharged by the decree. Such a party has no possible connection with the proceedings. and the clause could not have been inserted for the purpose of excluding him. No other reason has been suggested why this section should not be held to mean what it says, that any creditor who may prove his demand, share in the dividends, and is barred by the decree, may launch the proceedings. Mr. Hilliard seems mainly influenced by the idea that no action can be maintained upon an immature demand, and says much less can a commission issue upon it. This is exceptionally fallacious. It is not an instance where the causes which prohibit action in one case have an increased application in another. So far as these respective qualities are involved in these proceedings there is no analogy between

these wholly different processes. The one is to collect an overdue debt, to prosecute which before it is due would be as absurd substantially, and in common reason, as it is technically illegal. The other is to arrest a fraud upon a statutory trust; to commence an action in favor of all who are wronged, after its cause is complete, and the consequences of which are common to the mature and the immature demands. Both classes being alike protected by the statute and cut off by the decree, every reason which sustains action as to one must necessarily authorize it in favor of the other. This interpretation is not in the most remote degree at war with the familiar rule relied on by Mr. Hilliard, that you cannot sue the citizen upon a promise which he has not broken, or for a duty which he has not omitted (see Galloway v. Holmes, 1 Doug. 330; Hall v. Chandler, 3 Mich. 531; Cross v. McMaken, 17 Mich. 511; Drake, Attachm. 25–34; 1 Chit. Pl. 299; 20 Me. 287); and the kindred judgments and authors sustaining this familiar rule have no tendency to prove anything beyond it. There is another equally familiar and consistent one, that where property, either by operation of law or by act in pais is in any mode constituted a trust for the security of the acts or the payment of debts, and the custodian of the fund attempts an illegal appropriation, the law in all cases affords an immediate remedy. In these cases the question whether the debt is payable in praesenti or at a future day, however remote, is wholly immaterial. A creditor whose bond is not due may sustain a bill against an administrator dealing wrongfully with the assets. 1 Story, Eq. Jur. § 547. If a trust company should threaten to divert its funds to the destruction of annuities or its long obligations, equity would interfere. See 2 Story, Eq. Jur. § 825, for a list of the "brevia anticipitantia" at law, and sections 826 –851 for numerous instances where future interests and demands not due are protected.

The statute makes all the property of a debtor, in case of his insolvency, a trust fund for equal distribution among his creditors. Their agreements for credit have been made in reliance upon the debtor's implied promise that he will so hold it, and the analogies in other departments of the law, so far from being in conflict with, all demand that construction given by the Detroit judge. It is an instance of one holding property which the law devotes to one purpose seeking to divert it to another. The common law, I concede, has irrationally withheld the extension of this principle to all the occasions where its reasons would carry it, and has denied a remedy before judgment to a creditor at large against the funds of his debtor when no trust existed. So impolitic has this narrow doctrine been deemed, that in the absence of a bankrupt law many states have authorized attachments of a fraudulent debtor's property upon demands before their maturity. See Drake, Attachm. cited ante. This provision now to be

construed affords a remedy of the same general nature. We shall disregard no principle of policy or general jurisprudence by giving the words of the statute their natural and literal meaning.

The decisions and books referred to in reference to the early English bankrupt law demand a wholly different reading of our own statute from that which Mr. Hilliard and Mr. James suppose they justify. I have examined 14 East, 197; 5 Taunt. 338; 9 East, 498; 1 Mod. 50; 4 East, 438; and 1 Ld. Raym. 724, cited by counsel, and many other like cases, and, so far as they are accessible, the successive English acts under which they were made. A detailed analysis would lead to unwarranted prolixity. It is sufficient to say generally the statutes were so unlike our own as to render these judgments wholly inapplicable to its construction. But the history of English legislation and judicial discussion is by no means unworthy of notice. It shows quite clearly why the provision we are discussing assumed its present form. The earlier acts which will be found cited and construed in the cases referred to, did not authorize a debt not due to be proved at all. It was discharged by the decree, and the creditor was in no wise a party to, or affected by, the proceedings. Of course, under such a law he could not petition. It needed no judicial criticism to determine that. The law was amended so that such claimants might prove their debts, but the statute expressly prohibited their becoming petitioning creditors. It assumed quite clearly they would be such without the proviso, after they had been authorized to make proof, and their claims subjected to a discharge. In a few years afterwards there was still another amendatory act reciting that this inhibitory proviso had been found inconvenient and it was therefore repealed. Demands which were immature were placed on the same footing with those overdue, and all alike were authorized to initiate proceedings. Since 5 Geo. II. c. 30, by successive provisions this policy has been adhered to, of authorizing all creditors whose debts were provable and so discharged under the act, to be petitioners. 24 & 25 Vict. c. 134 (James, Bankr. 265), contains full provisions to this effect. That the person who drafted our law had gone over this history and used the word "provable" in reference to the principle it establishes, there can be no doubt. At no period in England has the anomaly here insisted on been administered. If a creditor there could not petition, it was because he could not prove, and because his debt was not discharged by the decree. Whenever he was subjected to the power of the law he was authorized to launch and aid in working the proceedings under it. It is quite unreasonable to suppose that our statute, passed in the light of such legislation and judicial discussions, using as it does the most appropriate language to embody its principle, intended to

discard it. Our law of 1841 [5 Stat. 440], although far less explicit that the present one, was held by Judge Conklin to authorize a petition by a creditor whose demand was not due. Such I understand was its accepted construction. See Barton v. Tower [Case No. 1,085]. I also agree with the district court that if it was not necessary to aver the demand was due, there was not a fatal variance. The judgment below is affirmed.