[Cartwright v. Bamberger, Bloom & Co.]

# Cartwright *v.* Bamberger, Bloom & Co.

*Bill in Equity by Attaching Creditor, for Injunction against Prior Attachment Proceeding as Fraudulent.*

| | |
|---|---|
| 90 | 405 |
| 97 | 507 |
| 90 | 405 |
| 99 | 297 |
| 99 | 625 |
| 99 | 643 |
| 90 | 405 |
| 102 | 457 |
| 90 | 405 |
| 104 | 145 |
| 105 | 301 |
| 90 | 405 |
| 108 | 365 |
| 109 | 223 |
| 90 | 405 |
| 112 | 143 |
| 114 | 511 |
| 90 | 405 |
| 119 | 167 |
| 90 | 405 |
| 121 | 189 |
| 122 | 323 |
| 90 | 405 |
| 123 | 218 |
| 123 | 357 |
| 123 | 358 |
| 125 | 577 |
| 90 | 405 |
| 127 | 126 |
| 90 | 405 |
| 130 | 612 |

1. *Injunction by attaching creditor, against prior attachment as fraudulent.*—A plaintiff in attachment at law may maintain a bill in equity to enjoin and set aside proceedings under a former attachment, on the ground that they are collusive in the interest of the debtor, and that the alleged debt is simulated. Such attachment is void as against creditors, who may be thereby hindered, delayed or defrauded (Code, § 1735), and is an attempt to dispose of property fraudulently (§ 3544), against which a creditor without a lien is entitled to equitable relief.

2. *Intervention of creditor as party, by petition or motion.*—In an attachment case at law, another creditor can not intervene by petition, and be made a party to the suit, in order that he may attack the proceedings on the ground of fraud, or fraudulent collusion between the attaching creditor and the debtor.

3. *Allegations of bill; sufficiency of.*—An allegation that the debt of the attaching creditor "is simulated," is the averment of a fact, and not of a legal conclusion; and an averment that "only a small sum, the amount of which is unknown to complainant," is in fact due, is sufficiently specific and definite.

4. *Sheriff as party.*—The sheriff, having possession of property on which he has levied an attachment, may be joined as a defendant to a bill filed by a creditor, which seeks to enjoin and set aside the attachment proceedings on the ground of fraud.

5. *Misjoinder of parties; who may object.*—When a person is improperly joined as a defendant to a bill, but does not object to the misjoinder, no other defendant can take advantage of it.

6. *Dissolution of injunction on answer.*—When the answer fails to meet and deny the material allegations of the bill with fullness, precision, and particularity of statement, as to facts within the respondent's personal knowledge, it is not sufficient to justify a dissolution of the injunction.

APPEAL from the City Court of Decatur, in equity.
Heard before the Hon. WM. H. SIMPSON.

R. A. McCLELLAN, and KYLE & SKEGGS, for appellant.

SOMERVILLE, J.—The bill is filed by the appellees, as attaching creditors of Isaac Pinkus & Co., they having already acquired a lien by a writ of attachment issued from a court of law, and levied on certain personal goods of the defendants in attachment, who are alleged to be insolvent. Its purpose is to assail, as collusive and fraudulent, a prior writ of attachment issuing from the same law court, at the suit of the appel-

[Cartwright v. Bamberger, Bloom & Co.]

lant Cartwright; also, to enjoin the sheriff from paying over the fund arising from the sale of the goods to such prior attaching creditor, and subject so much of the fund in the sheriff's hands as may be necessary to satisfy the complainants' demand. The claim of Cartwright, upon which his attachment suit was based, is alleged to have been simulated; and his purpose in suing it out is charged to have been to hinder, delay and defraud the creditors of Pinkus & Co., including the complainants.

This proceeding in equity is met *in limine* with the objection, that such a bill will not lie by an attaching creditor, although he acquires, under the express provisions of the statute, a specific lien by the levy of the writ of attachment. Code, 1886, §2957. The only remedy, it is insisted, by which a second attaching creditor can assail as fraudulent and collusive a prior suit by attachment, is in the court of law in which the proceeding is pending. It is contended that he should appear in that forum, and request of the court the privilege of becoming a party defendant to the suit, so that he may defend, either in his own name, or in the name of the defendant. These contentions cover the main questions which have been argued before us in the present case.

Whether an attaching creditor, who has acquired a specific lien by levy of his writ on an insolvent debtor's property, can, before judgment, maintain a suit to set aside as fraudulent a transfer of the attached property, is a question in regard to which there is a direct conflict among the American courts, and a difference of opinion among the ablest text-writers. Uninfluenced by statutory enactment, the general doctrine, with some exceptions, is, that a creditor at large, or simple-contract creditor, before judgment and execution, can not, on the ground of fraud, restrain, by the preventive aid of injunction, the disposition of the debtor's property in a sheriff's hands, held under execution or process of attachment, or restrain the debtor himself from disposing of his property in fraud of such creditors.— *Wiggins v. Armstrong*, 2 John. Ch. 144; 1 N. Y. Ch. Rep. 324; *Martin v. Michael*, 23 Mo. 50; 66 Amer. Dec. 656; *Scott v. McMillen*, 13 Amer. Dec. 239. And many of the authorities hold, that an attaching creditor stands on no better footing than one who sues by the ordinary process of the court. Mr. Bump, in his treatise on Fraudulent Conveyances, says, that a lien by attachment is as good, as a basis to support a creditor's bill, as a lien by execution; p. 536 (3d Ed.). The same view is taken by the New Jersey Court of Errors and Appeals, which is very high authority in matters of equity jurisprudence, to say nothing of many other of the American

[Cartwright v. Bamberger, Bloom & Co.]

courts.—*Hunt v. Field*, 9 N. J. Eq. 36; *Curry v. Glass*, 25 *Ib.* 108. Mr. Wait denies that an attaching creditor, before final judgment, can become the actor in such a suit, although he admits that there is a conflict, as well as some confusion in the authorities on the subject.—Wait on Fraud. Conv. (2d Ed.) § 81. The adjudged cases *pro* and *con* will be found cited in these and other authors who treat of this subject. 8 Amer. & Eng. Encyc. of Law, 774, note; 3 Pom. Eq. Jur. § 1415, n. 465; 1 Wade on Attach. § 33; 2 High on Injunctions (2d Ed.), § 1405.

But no doubt can exist on this point in this State. The statute itself, in plain terms, provides, that "a creditor *without a lien* [by which is meant a simple-contract creditor] may file a bill in chancery, to discover or subject to the payment of his debt any property which has been fraudulently transferred or conveyed, or attempted to be fraudulently transferred or conveyed, by his debtor."—Code, 1886, § 3544. *A fortiori* will such a bill lie, where the creditor has a specific lien, acquired by levy of an attachment on the insolvent debtor's property. We adopt, therefore, without hesitation, the line of authorities which hold that a bill in equity will lie in a proper case, in favor of such attaching creditor, to subject to the satisfaction of his demand property fraudulently conveyed by his insolvent debtor.

Creditors' bills are given a very comprehensive scope by our statutes. They may reach not only property which in due form has been fraudulently transferred or conveyed, but such as has been *attempted* to be so disposed of by the debtor. Code, § 3544. Our statute declares void, not only such conveyances, and assignments, but any charge fraudulently created on the debtor's property, any bond, or other evidence of debt; any "*suit commenced*, decree or judgment suffered," with fraudulent intent, or, in the words of the statute, "made with the intent to hinder, delay or defraud creditors, purchasers or other persons."—Code, 1886, § 1735.

No one doubts that a writ of attachment, issued collusively between creditor and insolvent debtor, for the purpose of giving preference, and with intent to effect a fraudulent transfer of the debtor's property to the plaintiff in attachment, through the machinery of the attachment process, is a void suit or proceeding within the meaning of section 1735 of the Code. Nor can we see any reason why the suffering such an attachment by the debtor, with like fraudulent intent, is not an "attempt" to fraudulently transfer the attached property within the meaning of section 3544 of the Code. The scope of the statute would be unnecessarily narrowed, and its utility

[Cartwright v. Bamberger, Bloom & Co.]

greatly impaired, to hold that the phrase, "attempted to be fraudulently transferred or conveyed," has reference only to the imperfect execution of formal transfers or conveyances signed by the debtor. Such a transfer may be made equally through the medium of an attachment suit, and the agency of the sheriff. This being true, the ineffectual resort to such judicial machinery, with the collusive purpose of transferring the debtor's property, may, with propriety, be characterized as "an attempt" to make such fraudulent transfer. The arm of the law should not be shortened in its effort to reach and arrest fraud, and legislation, having this purpose in view, should be liberally construed to accomplish the purpose of its enactment.

It is said, however, that the complainants in this bill had a plain and adequate remedy at law, and, this being so, that chancery will not take jurisdiction on account of the alleged fraud. It is insisted, as we have already said, that this remedy was for the complainants to have appeared in the alleged fraudulent attachment suit, asked to be made parties, and to have there defended the action, in their own name, or in the name of the defendant, insisting on its collusive or fraudulent nature. This right is accorded by the statutes of many of the States. In other States the practice has been recognized, without the aid of legislation; which is characterized by Mr. Drake as breaking "the fetters of artificial forms and rules," and attacking the evil of collusive attachments "with commendable spirit and effect." The numerical weight of the adjudged cases possibly supports this practice, as will be seen from the authorities cited by Mr. Drake, and those on the briefs of appellants' counsel.—Drake on Attach. (6th Ed.), §§ 272 *et seq.* No such practice, however, has ever prevailed in this State. During the whole history of our jurisprudence, extending through nearly three quarters of a century, no case can be found in which the right of a stranger is recognized to make himself a party defendant to an attachment suit, with the view of defending the cause on its merits. In *May v. Courtney,* 47 Ala. 185, the question was, whether one not a party to the record, who had an interest in the attached property, could make a motion to quash the attachment. It was held that a mortgagee, whose lien has been acquired after the levy of the attachment, could not make such motion, even for defects apparent on the face of the record. So, in *McAbee v. Parker,* 78 Ala. 573, a like rule was announced. Third persons, acquiring an interest *pendente lite* in the attached property, were held to be neither necessary nor proper parties to the suit; and it was held that they had no right to intervene

[Cartwright v. Bamberger, Bloom & Co.]

for the protection of their interests, by moving a dissolution of the attachment, or a discharge of the levy.

The right to intervene as a party to a suit invests the intervenor with the privilege of becoming an active litigant, of examining witnesses for himself, cross-examining those of his adversary, of being heard before the court and jury, and of appealing from any final judgment rendered against him. A stranger, whose rights are only incidentally affected by a pending attachment suit, has no such privilege in this State, whatever be the nature of the defense he may desire to interpose. We are not willing, at this late day, to incorporate such a practice into our jurisprudence.

The precise question here under consideration arose in the case of *Hale v. Chandler*, 3 Mich. 531. It was there held that subsequent attaching creditors were not permitted to appear and defend a prior attachment suit, in the name of an absent debtor, but that such creditors might by bill in chancery contest the lien claimed by a prior attaching creditor, especially on the ground of fraud. The cases which authorize such a practice in courts of law are reviewed by the court, and the conclusion reached, that, even if strangers can be accorded such a privilege—viz., that of intervening to defend in the name of the defendant in the attachment suit—it is not a matter of legal right, and, if recognized at all, it would only be considered as *cumulative* to their right of action by bill in chancery. The case of *Cogburn v. Pollock*, 54 Miss. 639, also fully sustains the jurisdiction of chancery in cases of this nature. There, a subsequent attaching creditor, whose attachment had been levied on a stock of merchandise in a storehouse, was permitted by bill in equity to assail, as collusive and fraudulent, a prior seizure of the goods under a process of distress for rent by the landlord of the defendant in attachment. An injunction was also sustained, in aid of the attachment, to prevent the appropriation of the goods *pendente lite* by the insolvent debtor, to the prejudice of the complainants. It was said by the court, that the right of complainants to maintain the bill is well sustained by authority. To like effect is the case of *Heyneman v. Dannenberg*, 6 Cal. 376. These cases seem to us to be entirely sound in the conclusions thus reached, especially in this State, where a creditor's bill will lie by one without a lien.

It has been adjudged, and needs no argument to justify the conclusion, that the summary jurisdiction exercised by a court of law in determining the priorities of the legal liens of rival attaching creditors, whether on the motion of the sheriff, or of the parties themselves, asking for a distribution of the fund

arising from the sale of the attached property, in no manner interferes with the jurisdiction of equity to adjust the rights of such rival claimants, in a proper case, for cognizance by a court of equity.—*Gusdorf & Co. v. Ikelheimer & Co.*, 75 Ala. 148.

In no aspect in which we view the case, can we see that the complainants had a plain and adequate remedy at law, such as would oust the more efficient jurisdiction of a court of equity, which is peculiarly suited to determine the rights of the parties litigant to this suit. Not only is fraud alleged in the simulated character of Cartwright's demand, but there is the averment of an attempt by an insolvent debtor to use the process of attachment as a means of effecting a fraudulent transfer of his property. The property attached is personal and movable, and liable to be lost by distribution to an insolvent litigant. The race for precedence among rival lien-holders involves the necessity of staying the process of the law court, until equity can sit to adjust the conflicting priorities.

The averment of the bill, that Cartwright's demand of about $9,500, for which he had procured an attachment, was "simulated," is the averment of a fact, and not of a legal conclusion. Simulated means "counterfeited; feigned; pretended."—Worcester's Dict. "Assuming the mere appearance without the reality."—Webster. The averment that the debt was simulated, and that Pinkus & Co. in fact owed Cartwright "a small sum," the amount of which was unknown to the complainants, is sufficiently specific, and not subject to the defendants' objections raised by demurrer.

We are of opinion that the defendant Ryan, who, as sheriff, had legal custody of the attached goods as a stake-holder, was a proper party to this suit. But, however this may be, he made no objection based on the fact of his alleged misjoinder, and the other defendants could take no advantage of it.—*Horton v. Sledge*, 29 Ala. 478.

The defendant Cartwright's answer to the bill nowhere explains with sufficient certainty the consideration of the large debt which he claims to hold against the defendants in attachment, the very execution and *bona fides* of which were challenged by the complainants' bill. It was charged that this demand was largely simulated—having no reality of existence except in appearance merely—except for a very small sum. The answer should have met the charge fairly and without evasion. The matter must have been within the knowledge of the claimant. He should not only have denied the fact of the alleged debt being feigned, and have asserted the valuable

[Compton v. Hankins.]

character of the consideration, but he should have stated fully, and without evasion, the nature of such consideration, whether it was for money loaned, labor done, for goods or other property sold, or otherwise, and the particular nature and kind of service or property, if any. The answer in this particular, to say nothing of other defects in its averments, was insufficient to justify a dissolution of the injunction.

The City Court did not err in refusing to dissolve the injunction, nor in rendering the decree overruling the demurrers to the bill. Nor do we discover any other reversible error in its rulings.

The decree is accordingly affirmed.