# Rice, Stix & Co. *et al.* v. Less, *et al.*

*Bill in Equity to set aside Attachments, as Fraudulent and Collusive.*

1. *Bill to set aside attachments; evidence of fraud.*—Where on a bill filed by creditors of an insolvent debtor to set aside attachments sued out by other creditors ·of the common debtor, it is alleged that said claims of the attaching creditors were false and simulated, and the attachments were sued out by collusion for the purpose of defrauding complainants and other creditors of said debtor, evidence that after the filing of the bill the goods were sold under an order of the court, and that while they were bought in the name of a third person, they were in fact purchased for one of the attaching creditors, and paid for with the money of the debtor, is competent and admissible as explanatory and confirmatory of other preceding facts, which, when proved, sustain the averment of the bill, and as tending very strongly to show collusion.

2. *Same; attachments sued out by near relatives, when set aside.*— When on such a bill it is shown that the debtor deliberately deceived his complainants and employed many devious ways to place all of his property beyond the reach of his creditors other than those attaching, that the attaching creditors were very near relatives, who could not satisfactorily account for their claims, but who were very active in the steps taken by the debtor to get possession of all money owing and belonging to him, and he and they did many things inexplicable with fair dealings, and though they lived far apart, all of the claims of the attaching relatives were at the same time in the hands of the same attorney, who also represented the debtor, and that when the property levied on was sold under order of court, it was purchased by a third person for one of the attaching creditors, and paid for with money furnished by the debtor, such attachments will be construed to have been obtained by collusion between the attaching relatives and the common debtor, and should be set aside as fraudulent and void.

[Rice, Stix & Co. *et al* v. Less, *et al.*]

APPEAL fron the Chancery Court of DeKalb.
Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed by the appellants, Rice, Stix & Company, and other creditors of Charles Less, against the appellees, Charles Less and certain attaching creditors. The purpose of the bill, and the facts of the case are sufficiently stated in the opinion. The appeal is prosecuted by the complainant from a decree of the chancellor dismissing the bill.

JAMES NORFLEET, for appellant, cited *German Nat. Bank v. Foreman,* 138 Pa. St. 474, 21 Amer. St. Rep. 908 ; *Mechanics & Traders Bank v. Seitz,* 150   Pa. St. 632, 30 Amer. St. Rep. 853 ; *Bridgman v. McKissack,* 15 Iowa 268 ; *Rappleje v. Bank,* 93 Ill. 396 ; Bump on Fraud. Conv., 571; Freeman on Executions, § 434.

DAVIS & HARALSON, *contra* cited *Crawford v. Kirksey,* 55 Ala. 282 ; *Hodges Bros. v. Coleman,* 76 Ala. 103.

COLEMAN, J.—About the 21st of December, 1892, the Fort Payne Bank, Hulda Marks, Valeria Less, Isaac Less, H. L. Marks and L. Koch & Co., as creditors of Charles Less, sued out separate attachments which were levied by the sheriff on a stock of goods belonging to their debtor. The goods were advertised for sale by the sheriff. Prior to the day of sale complainants, also creditors of Charles Less, filed their bill of complaint, and alleged, that the claims of Hulda Marks, Valeria Less, Isaac Less, and H. L. Marks were false and simulated, and that all the attaching creditors had colluded with Charles Less for the purpose of defrauding complainants, and that the attachments were sued out and levied on the goods with the connivance and consent of Charles Less, so as to place them beyond the reach of his creditors. The bill prayed that the sheriff be enjoined from selling the property, and that the attachmen ts be set aside and annulled, and that the property be subjected to claims of complainants. Charles Less claimed his exemptions. Upon a proper showing, the goods were subsequently sold under an order of the court, and the money paid over to the sheriff. The goods were knocked down J. E. Russell as the purchaser. After the sale by the sheriff, the complainants further amended

their bill, and charged that the goods were in fact purchased for Hulda Marks and paid for with the money of Charles Less, and that he was in fact the real owner of the goods, and that this was in furtherance of the original plan and intention of the attaching creditors. The last amendment is called in the pleading and in argument a supplemental bill, but it is a mere amendment to the original and amended bill under rule 48 of Chancery Practice. At the final hearing the chancellor dismissed the bill of complaint.. The record is very voluminous, and we will not undertake to discuss in detail the testimony of all the witnesses in its varying phases. The learned chancellor evidently found "'crookedness," to use his own expression, and plenty of it, in the transaction, but based his conclusion upon the failure of the complainants to establish satisfactorily that the claims were simulated and the collusion of the parties, as averred in the bill. We infer also from the argument of counsel that although the evidence might show, that the goods at sheriff's sale were paid for with funds of the fraudulent debtor, Less, this evidence would furnish no ground of relief under the present bill. It is well settled that relief can not be granted on facts which occurred subsequent to the filing of the original bill.— *P. & M. Ins. Co. v. Selma Savings Bank*, 63 Ala. 585 ; *Hill v. Hill*, 10 Ala. 527 ; *Vaughan v. Vaughan*, 30 Ala. 329. Although this may be true, and to subject the goods after the sale, if there were no other sufficient grounds of relief, to the debts of Less, upon proof that they were paid for with his money, might require the institution of new proceedings, such facts may be competent evidence, explanatory and confirmatory of other preceding facts, which sustain the averments of the bill when proved. A fact accomplished often furnishes evidence of the intent with which certain preceding acts were done which resulted in the consummation. If the property had not been sold by the sheriff, and the evidence had shown an agreement between Hulda Marks and Charles Less, that it was to be sold and she was to become the ostensible purchaser, and title taken in her name, and that he would ·furnish the purchase money, such evidence would go far to establish collusion. The purchase money paid to the sheriff, represents the goods. Evidence that she did purchase the goods with his

money, is strongly persuasive to show collusion, and, in our opinion, sheds much light on previous conduct.   We agree in the conclusion of the chancellor : that some of the debts of the attaching creditors were not simulated, and it may be that some of them were.  It may be conceded also, that all the respondents did not collude with Charles Less .for the purpose of hindering, delaying and defrauding his creditors.   The case is not one · in which there was a sale of property in absolute payment of preceding debts.   Our statute, section 3544 of the Code of 1886, is very broad.   It reads as follows :   "A creditor without a lien may file a bill in chancery to discover or to subject to the payment of his debt any property which has been fraudulently transferred or conveyed, or attempted to be fraudulently transferred or conveyed by his debtor."   The bill is filed under this statute.—*Cartwright v. Bamberger, Bloom & Co.*, 90 Ala. 405.

We will examine the facts in support of the bill. First.   Hulda Marks is the mother-in-law of defendant, Charles Less ;  Valeria Less  is his wife ;  H. L. Marks is his brother-in-law ;  Isaac Less, his brother.   These are attaching creditors and defendants to the bill.   The evidence also shows that Minnie Jacobs, a sister, and Muscovitz,  another brother-in-law of Charles Less, were parties in the transaction.   These two latter persons are not parties to the suit, though the former is interested in the result, and the latter had a part in the general scheme of Charles Less assigned to him.   We deem it unnecessary here to go over the facts as regards Charles Less.   That he deliberately deceived his creditors as to his condition, in order to induce them to sell him large stocks of goods, must be conceded, if we are to credit the uncontradicted evidence of several witnesses, and that he resorted to many "ways that are dark" which he has not undertaken to explain, calculated to place his effects beyond the reach of creditors, is clearly established.   Many of those charged with collusion are his near relatives; a fact not to be overlooked in weighing the evidence.   The claims of these attaching relatives, though living far apart, are found at the same time in the hands of the same attorneys for collection, and who also represent Charles Less in his business and in this suit.   Hulda Marks living in St. Louis, acts with du-

[Rice, Stix & Co. *et al* v. Less, *et al.*]

plicity towards his creditors who reside there. Claims due Charles Less for merchandise sold are closed with due bill made payable sometimes to Hulda Marks, the mother-in-law, and sometimes to Valeria Less, the wife. Hulda Marks directs, or at least there is an order with her signature which directs, the Fort Payne Bank to pay over to Valeria Less the claims when collected which are thus payable to her. She utterly fails to account for the resources from which she could obtain the large amount of cash, which it is claimed was hers, and used in the purchase of the goods. Clear evidence of ability to furnish the cash should be given, when the ability is questioned.—*Harrell v. Mitchell*, 61 Ala. 270. It is shown beyond all doubt, that the express package of $3,000 was not sent from St. Louis by her as it was purported to have been sent; but was in fact put in the express at Chattanooga, and endorsed as if shipped by Mrs. Hulda Marks from St. Louis. From all the circumstances surrounding this shipment, we are irresistibly led to the conclusion that Charles Less expressed this package himself, and we are equally convinced, that the five hundred dollars handed to the bank by Mrs. Less never came from Mrs. Marks, but was supplied by Chares Less. We have no doubt from the evidence in this record that the thirty-five hundred dollars which paid for the goods was the money of Charles Less. Soon after the purchase of the goods Charles Less is in control with discretionary powers in the sale of the goods. Much more that is "devious" and unexplained could be particularized as to the conduct of Mrs. Hulda Marks. In addition to what is said above in regard to Valeria Less, we find her leaving Fort Payne a few days before the issue of the attachments, to visit Hot Springs to consult a physician. Muscovitz, a brother-in-law, resided there. A short time prior to this, Charles Less had drawn on Muscovitz for a thousand dollars. This draft was dishonored. Charles Less wrote him an urgent letter to send him his money. He says in this letter that he had confided everything to him, and that he must not fail him, or words to that effect. Muscovitz was requested to destroy that letter. Mrs. Less says she was there to consult a physician. Mr. Muscovitz, with whom she stopped, did not know she was sick. Muscovitz denies that he owed Charles Less, but gave her a check pay-

able to H. L. Marks for the amount that Charles Less stated in his sworn answer was due him from Muscovitz. H. L. Marks never indorsed this check. It was sent to Hulda Marks, with H. L. Marks' name written across the back of it. This indorsement must have been made by Valeria Less or Hulda Marks. The visit to Muscovitz was in December, about the time of or just before the issue of the attachments, but after all claims were placed in the hands of their attorneys, who were authorized to issue the attachments. Muscovitz swears that on that visit, Valeria Less told him she wanted money for her mother, Hulda Marks, to *buy a stock of merchandise*. We have the New York exchange bought and paid for by Charles Less in favor of one Shaeffer for $782. Shaeffer was either Charles Less or a myth. Our conclusion from the evidence is, that the proceeds of this exchange went to Muscovitz. No witness, not even Charles Less himself, has been able to identify Shaeffer, or account for such a person, yet his name was indorsed on the exchange draft. This was one of the schemes resorted to by Charles Less to get his cash out of the Fort Payne Bank, and placed securely beyond the reach of his creditors. By the aid of Valeria Less, H. L. Marks, Muscovitz and Hulda Marks, we think it found its way back to Charles Less. It seems that Charles Less had destroyed or lost his bank book, and the checks returned to him by the bank, upon the balancing of his bank account. No memorandum was kept by the bank of the names of the payees in the checks drawn by Less. It can not be ascertained whether there were other checks drawn, the proceeds of which found their way to some place subject to the order of Charles Less. Muscovitz had paid other drafts drawn on him by Less, and which created no indebtedness against the drawer. There are no books to be found showing the business of Charles Less as a merchant. H. L. Marks, the brother-in-law, began business in the store of Charles Less in August, preceding his failure. His statements made to travelling salesmen, were in accord with those made by Less. His testimony as to the mercantile books of Charles Less, his connection with the draft drawn by Muscovitz, the entire omission to explain why this draft was made payable to him, and other suspicious circumstances, connect him with the general purpose to

aid and assist Charles Less to defraud his creditors.

We might go further into details, and show other acts utterly inconsistent with an upright and fair purpose on the part of Charles Less, Hulda Marks, Valeria Less and H. L. Marks. We deem it unnecessary to comment on the testimony of Mr. Campbell and Mr. Russell. Whatever our conclusion may be, in regard to the part taken by them in the sale and purchase of the goods and their transfer to Hulda Marks, could not affect the debt of the bank. We think the evidence shows that the debt due the bank was a *bona fide* claim, and that it has not been paid. We are of opinion that the attachments sued out by the bank and by Koch & Co. were to collect *bona fide* debts, and for this purpose. The evidence is not sufficient to implicate Isaac Less, who lived in a distant State, with the collusive purposes and conduct of the other relatives. It is true that he received information from some one as to Charles Less' condition, for his claim was with the others for collection by attachment, but this is not enough. He was not examined and the validity of his claim is fairly well established.

Under all the evidence, our conclusion is, that complainants were entitled to relief, as against Hulda Marks, Valeria Less and H. L. Marks. These parties may be entitled to a judgment in their attachment suits against Charles Less. That is a matter between them and Charles Less, and in which complainants may not be concerned in this proceeding.

The decree of the chancery court will be affirmed so far as it dismissed the bill against the Fort Payne Bank, Koch & Co. and Isaac Less. It will be reversed as to Charles Less, Hulda Marks, Valeria Less and H. L. Marks; and a decree will be here rendered reinstating the injunction and decreeing relief to complainants as to these latter defendants, and directing the sheriff, after satisfying the judgments which have been or may be recovered by the attaching creditors as to whom the bill is dismissed, to retain the balance subject to further proceedings in the chancery court. The register will hold a reference, and ascertain and report the amounts due complainants, and report the same to the next term of the chancery court. The appellants will be charged with one-third of the costs of appeal, and Charles Less, Hulda Marks and H. L. Marks, the remaining two-thirds.

[Carter v. O'Bryan Brothers.]

Affirmed in part, reversed and rendered in part and remanded. ·