[Builders & Painters Supply Co. *et al.* v. First National Bank.]

to the plaintiff complained of, and the names of the persons who witnessed it, this cannot affect the rule that governs the courts in passing upon motions for new trials predicated upon newly discovered evidence.—*McLeod v. Shelby Manufacturing & Imp. Co.*, 108 Ala. 81.

The other ground of the motion insisted upon is that the verdict of the jury was contrary to the evidence. After a careful examination of the evidence, and after according all reasonable presumption to the correctness of the verdict and judgment below, we are not willing to say that the preponderance of the evidence is so decidedly in favor of the defendant as to leave no substantial doubt that the verdict was wrong and unjust. And unless we can so hold, the verdict and judgment should not be disturbed.—*Cobb v. Malone & Collins*, 92 Ala. 630,; *Davis v. Miller*, 109 Ala. 589; *Terst Sons & Co. v. O'Neal*, 108 Ala. 250; *Holloway & Gilchrist v. Harper*, 108 Ala. 647; *Anderson v. English & Webb*, 121 Ala. 272.

There was no error in refusing the motion for a new trial. The judgment must be affimed.

Affirmed.

# Builders & Painters Supply Co. *et al.* v. First National Bank.

*Bill in Equity to enjoin Prosecution of Attachment Suit.*

1. *Fraudulent attachment; bill for injunction by creditor* —Under the statutes which provide that a creditor without a lien may file a bill in chancery to discover or subject to the payment of his debt any property which has been fraudulently transferred or attempted to be fraudulently transferred. or conveyed by his debtor, and that all suits commenced or decrees or judgments suffered with intent to hinder, delay or defraud a creditor are void as against the creditor defrauded (Code, § § 818, 2156), a simple contract creditor can not maintain a bill to enjoin an attachment suit instituted by another creditor and have the property levied on subjected to the payment of his own debt, upon the ground that the attach-

ing creditor sued out the writ of attachment without the existence of a ground therefor and without probable cause for believing that a ground existed for suing out such attachment, in the absence of further averment and proof of fraud on the part of the common debtor, or of collusion between the attaching creditor and said debtor.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the HON. A. D. SAYRE.

The bill in this case was filed by the appellee against the appellants. The facts of the case are sufficiently stated in the opinion.

To the bill as amended the defendants, who were creditors of the Builders & Painters Supply Company, demurred thereto upon the following grounds: 1. Because the existence or non-existence of statutory grounds for the suing out of said attachments by these defendants against the Builders & Painters Supply Co., are questions personal to the defendant, Builders & Painters Supply Co., and which it alone can raise. 2. Because these defendants can not be called upon to litigate with the complainant in said bill, the existence or non-existence of statutory grounds for the suing out of said attachments. 3. Because these defendants, respectively, have executed attachment bonds, in double the amount of their respective claims, with sufficient surety, payable to the said defendant, Builders & Painters Supply Co., with condition as required by statute. 4. It does not appear in and by said bill that the attachments sued out by these defendants, as therein alleged, were sued out by and with the knowledge and consent of the said Builders & Painters Supply Co. 5. It does not appear in and by said bill that the attachments of these defendants, as mentioned in said bill, were sued out as the result of any agreement, understanding or collusion, express or implied, by and between them or either of them, and the defendant Builders & Painters Supply Co. 6. It does not appear in and by said bill that the Builders & Painters Supply Co. was in any manner connected with the suing out of said attachments, except that it was a debtor of these defendants, and upon its property the respective

writs of attachment were levied.   7. Because it appears in and by said bill that the complainant therein is a simple contract creditor, and that the object of said bill is not to subject to the payment of complainant's debt any property which had been fraudulently transferred or conveyed, or attempted to be fraudulently transferred or conveyed by its debtor.   8. Because it does not appear in and by said bill that the property therein sought to be subjected to complainant's demand has been fraudulently transferred or conveyed, or attempted to be fraudulently transferred or conveyed by the Builders & Painters Supply Co., the debtor of complainant.

The appeal is prosecuted by the defendants from the decree allowing a further amendment to the bill and overruling the motion to dismiss for the want of equity and demurrers to the bill and the motions to dissolve and discharge the injunction; and this decree is assigned as error.

LOMAX, CRUM & WEIL, J. M. CHILTON and G. F. MERTINS, for appellant.—The bill in this case, as amended, is without equity.   The chancery court had original jurisdiction of a bill by a *judgment creditor,* or by a creditor with a lien, to reach and subject his debtor's property, but no such privilege was accorded a *simple contract* creditor, until, by legislative enactment.   Section 818 (3544) of the Code of 1896.   The jurisdiction of this Court to entertain the bill now before us, and the only possible authority for the bill, is necessarily dependent upon the section last mentioned; the provisions of which are as follows: "A creditor without a lien may file a bill in chancery to discover or to subject to the payment of his debt any property which has been fraudulently transferred or conveyed, or attempted to be fraudulently transferred or conveyed by his debtor.   Section 2156 (1735) of the Code simply declares certain instances or cases which will *support* a *bill,* filed by and under the authority of section 818 (3544) *supra.*   As above stated, this statute is simply *declaratory,* and does not have relation to the *jurisdiction* of the chancery court, which is governed by the statute first referred to, and which

was enacted at a different time.   It is clear that the bill here, cannot be supported by the provisions of either of these sections, and that these sections are, *perforce of their own words and plain meaning,* directed against the *debtor's* fraud, and not against the fraud of third persons—creditors—and to which the debtor is in no sense a party, or in any manner connected, and, indeed, which may have been accomplished against his will and desire.   In other words, it can not be held, that the act or transaction of a *third party, accomplished without the knowledge or consent of the debtor, and contrary to his will and desire, operates to transfer or assign the property of the debtor, and to divest him of his title and ownership therein,* or to give another creditor a right of action against the debtor?   The provisions of these sections are not complicated, and as has been said by the Court in the case of *Evans v. Welch,* 63 Ala. 250, "there is but little room for the construction of them."   See also the case of *Lehman v. Meyer,* 67 Ala. 396, 402.

It will be observed, in construing these statutes, that there is a constant reference to the fraudulent *transfers of the debtor.*   While it is true that a *formal* transfer by the debtor is not necessary, as for instance, a purchase by him in the name of a third person in fraud of his creditors, or an attachment procured by him, or a judgment fraudulently confessed by him, will be treated as in substance, a conveyance by him, (*Kennedy v. Bank,* 107 Ala. 170; *Cartwright v. Bamberger,* 90 Ala. 405; *Ala. Nat. Bank v. Mary Lee C. & R. Co.,* 108 Ala. 288) ; yet in *all* these cases the act assailed, giving the Court jurisdiction and by the Court condemned, *was the act of the debtor.—Cawthorn v. Jones,* 73 Ala. 84; *Bell v. Goetter,* 106 Ala. 462; Wait on Fraudulent Conveyances and Creditors' Bills, § 15; 2 Kent. Commentaries 440; *Adkins v. Bynum,* 109 Ala. 281; *Lehman v. Greil Bros.,* 119 Ala. 262; *Kyle v. Swem,* 99 Ala. 577.

A determination of this case in favor of the complainant, would result in the announcement of another peculiar proposition, namely, that the mere fact that one person ( a creditor) has wronged a debtor, who has

himself been guilty of no wrong, arms another creditor with the right to take away the debtor's property from both the wrong-doer and the sufferer and condemn it to his own debt. With all deference, we suggest, that if this may be done, it must, since it can find no justification in the debtor's conduct, and as the debtor is not bound, either in law or morals for *another's* conduct, find its sole basis in the condition in which the property itself is found—a "deodand," so to speak; an inanimate object by which personal injury is inflicted and which, under the ancient common law, was seized and condemned.—*L. & St. L. R. R. Co. v. Clarke*, 152 U. S.

Our statute, Code § 2156, as has been frequently held, and as its language on comparison shows, is a substantial re-enactment of the English statute.

It will be seen first that by its very terms, both statutes apply equally to "formal" written conveyances, and to conveyances "otherwise"—i. e., informal conveyances. It is also expressly declared, as an incident common both to "conveyances" and to "suits commenced," that there shall exist an intent to defraud on the part of the *debtor*. First, a conveyance, with fraudulent intent, etc.; next a suit with like (fraudulent) intent. So that when the court below declares that the intent of the debtor to defraud need not appear in order to declare "a suit commenced" fraudulent, but must appear in respect to "formal" conveyances sought to be set aside for fraud, it makes a distinction which is not only not recognized by either of these statutes, but which their express words show, does not exist. With this distinction out of the way the only predicate for the opinion falls. Where an attachment is attacked as fraudulent, the issue—the fraudulent intent of the debtor—is determinable on the same general principles as in case of a conveyance assailed for fraud.—*Bamberger v. Voorhees*, 90 Ala. 405; s. c. 99 Ala. 297; *Comer v. Heidelbach*, 109 Ala. 223.

WATTS, TROY & CAFFEY, and HORACE STRINGFELLOW, *contra.*—The bill as amended and the answer thereto were verified. Waiving any defects in the answer on account of evasiveness, uncertain-

ty, lack of fullness, and the categorical character of its denials, the court had a right to retain the injunction, which was simply one requiring defendants to await the result of this litigation before asking to enforce collection of their judgments. Even where the denials in the sworn answer are full, direct and certain, the court may retain the injunction if greater injury would result from its dissolution than from its retention.—*Harrison v. Yerby*, 87 Ala. 185, 189; *P. & M. Bank v. Lauchcimer*, 102 Ala. 454; *New Eng. M. Co. v. Powell*, 97 Ala. 483, 489. And where irreparable injury may result from the dissolution, there is a positive duty on the part of the court to retain it. *Scholze v. Steiner*, 100 Ala. 153-4; *Kinney v. Ensminger*, 87 Ala. 341.

The complainants are simple contract creditors of the debtor defendant in attachment, and seek to have set aside and declared fraudulent attachments alleged to have been sued out, without ground or probable cause therefor, or false affidavits, with the intent of hindering, delaying and defrauding complainants and other creditors of said debtor.

While no creditor has a property right or lien, as matter of law, in or upon the property of his debtor, yet every creditor has an interest in such property and a right to subject it, so long as it remains in the hands of the debtor, to the payment of his debts. An attachment followed by condemnation fixes a lien which dates from the day of the levy of the writ. An attachment sued out without ground therefor is a fraud. This proposition is not open to doubt in Alabama.

The act of the plaintiff in attachment is the essence of the fraud; by his false affidavit it comes into existence, and but for such affidavit it could not be begun, much less consummated, and by such affidavit it can be consummated. "A fraud upon creditors consists in the *intention* to prevent them from recovering their just debts by an act which withdraws the property of their debtor from their reach."—Bump, on Fraud. Convey., (4th edition), § 21; *Ala. I. Co. v. Pettway*, 24 Ala. 544. The plaintiff may use a colluding party, an innocent party, or even a court of justice, to aid him, and yet his act be a fraud, nevertheless.—*Ala. Bank v. Mary Lee Co.*, 108 Ala. 288; *Decker v. Decker*, 108 N. Y. 135.

Only the intervention of a *bona fide* purchaser for value without notice will put the fraud beyond reach. Parties intending to commit fraud frequently choose, purposely choose, innocent persons instead of co-conspirators, to aid them in accomplishing it, as, for instance, in cases of voluntary conveyances; and yet it has never been doubted that the innocence or purity of intentions of such persons so aiding is no defense to the fraud.—Bump. Fraud. Conveyances, (4th edition,) § 239.

In *Pickett v. Pipkin,* 64 Ala. 524, the court says, in such a case, "There can be no inquiry into the good faith of the grantee." In the like case of *Seals v. Robinson,* 75 Ala. 371, the court says "It is his (the donor's) intent, not the intent of the donee, which is material; the fraud of the donor is visited upon the donee, though he may be *doli incapax,* or though his intentions may be fair and honest." In *Metcalf v. Arnold,* 110 Ala. 180, debtors organized a fraudulent corporation to aid them in a fraudulent disposition of their property. The court held it a fraud notwithstanding, and declared that the novelty of the device was of no consequence; that "the fraud of its conception and consummation vitiates it, as fraud vitiates all transactions tainted with it."

In the case at bar, it is contended, that even though the debtor were innocent of participation in the attachment proceedings, yet, since the plaintiff in attachment intended in proceeding against that debtor to hinder and delay other creditors of the common debtor, it is a fraud upon such other creditors. The injury to the other creditors is the same, whether the intention of the plaintiff in attachment was confined to defrauding and injuring them alone, or both them and the debtor. Most frequently, the former is the case; it is, nevertheless, held that the latter is a fraud which such other creditors may redress in a court of equity.—*Pettus v. Smith* 4 Rich. Eq. 203; *Sweet v. Converse,* 88 Mich. 1.

Likewise, no outsider can intervene in the main suit or question the truth of the ground of attachment, and there is no way that a third creditor can either defeat the attachment in a law court or compel the defendant

in attachment to give him or aid in giving him any relief on the bond.—*Cartright v. Bamberger,* 90 Ala. 405. Granted, however, it is said, that the court holds a groundless attachment to be a fraud; mere fraud is not sufficient to give a court of equity jurisdiction. Fraud is cognizable both at law and in equity; and whether or not complainants can go into equity depends upon whether or not there is an adequate remedy at law.—3 Brickell, 343, §§ 173 and 174.

It is apparent from what has been said above that so far from there being an *adequate* remedy at law, there is no remedy. If complainants have any right or interest which has been invaded, therefore, the only way they can protect it is by bill in equity.—Bump. Fraud. Conveyances, (4th edition), § 532. But for their bill in chancery, a fraud would be permitted, an abuse of the process of court allowed, without redress. Where it is alleged, as in the case at bar, that the property of the debtor has been subjected under fraudulent attachments, with the purpose of hindering, delaying and defrauding complainants in collecting their just debts, it must be that there has been an invasion of complainants' rights.

However it may have been at common law, it cannot be doubted under our statute that complainants have a right or interest which has been invaded. Code, § 2156, provides that "every * * suit commenced" "with intent to hinder, delay or defraud creditors * * of their lawful * * debts or demands" "against the persons who are or may be so hindered, delayed or defrauded * * (is) void," and the theory of the bill, as appears from the allegations, is that the groundless attachments are "suits commenced" to hinder, delay and defraud the creditors of the defendant in attachment. Conceding that *the suing out and levy of a groundless attachment is a fraud,* for the existence of which it is not necessary for the plaintiff in attachment to have the consent or co-operation of the defendant in attachment, it follows logically that the cases of *Cartwright v. Bamberger,* 90 Ala. 405, *Bank v. Laucheimer,* 102 Ala. 454, *Rice v. Less,* 105 Ala. 298; *Collier v. Werthemier,* 122 Ala. 320, and *Comer v. Heidelbach,* 109 Ala.

[Builders & Painters Supply Co. *et al.* v. First National Bank.]

220, are authorities for the proposition that such attachments are "suits commenced" within the meaning of this section of the Code; and we consider these decisions to settle beyond controversy that a right of complainant has been invaded if the allegations of the bill are true. To the same effect are *Steiner v. Parker*, 108 Ala. 365; *Ala. Bank v. Mary Lee Co.*, 108 Ala. 288. The very terms of the statute cover the case at bar.

DOWDELL, J.—The epitomized statement contained in the brief of appellee's counsel, of the contents of the bill and other pleading as shown by the record, and which we adopt as sufficiently presenting the facts, is as follows:

The bill in this case as originally filed by the appellee, the First National Bank of Montgomery, averred that the Builders & Painters Supply Company was indebted to it in the sum of $18,000, evidenced by the notes of the debtor company. That on the 2d day of November, 1897, suit was instituted by said bank upon said indebtedness in the circuit court of Montgomery. That subsequently on the 9th day of November, 1897, appellants, creditors of said Builders & Painters Supply Company, caused attachments to be issued out of the said circuit court against said Supply Company which were levied upon certain portions of the stock of merchandise of said Supply Company the identity of which was unknown to appellee. "That before the issuing of said writs of attachments the respective plaintiffs respectively by themselves or by their attorneys made or caused to be made an affidavit of the amount of the alleged debts due to them respectively and also that the defendant therein had money, property or other effects liable to satisfy its debts which it fraudulently withholds, and lodged such affidavits with the clerk of the court issuing said writs, and said writs were issued upon that ground and no other. That orator is informed and believes and upon such information and belief avers and states that such allegation in said affidavits that said defendant had money or effects liable to satisfy its debts which it fraudulently withheld was and is false and untrue and that there was and is no

ground for the issuance of said attachments, and that said several parties suing out said several writs of attachment had no probable cause for believing that the ground upon which the same were sued out or any other ground for suing out attachments existed. That the suing out of said writs was an abuse of the process of the court, and was done by said several plaintiffs for the purpose and with the intent of procuring an unlawful and illegal preference in the payment of the several claims held by them against said Builders & Painters Supply Company, when no ground for attaching the property of said company existed and when said several parties suing out the same had no probable cause for believing that any such ground existed, and recklessly and in defiance of the rights of orator and the other creditors of said company and with the intent of hindering, delaying or defrauding orator and the other creditors of their just claims and demands; and that said attachments so sued out are suits commenced with the intent to hinder, delay or defraud orator and such other creditors of said company."

The said attaching creditors, the said debtor company and the sheriff were made parties defendant to the bill. The prayer for relief was that said several writs of attachment should be declared fraudulent and void as against appellee, and for general relief.

On the 20th day of November, 1897, an amendment was filed to the bill in which it was averred that subsequent to the original levy of said attachments the sheriff changed the levy of the same, and each was levied upon all the stock of merchandise of the defendant company, that subsequently the defendant company executed a replevy bond and the property levied upon was returned to the defendant. That the property levied upon was greatly in excess of the amount of said attachments.

To the bill as thus amended the appellants filed demurrers and motion to dismiss for want of equity.

On the 18th of February, 1898, a decree was rendered overruling demurrers and motion to dismiss.

On the 24th day of March, 1898, the appellants filed answers to said bill as amended containing purely cate-

gorical denials of the averments of paragraph three of the bill above quoted, and setting up affirmative and new matter of defense.

On the 16th day of May, 1898, the bill was amended by adding prayer for injunction.

On the 21st of September, 1898, the bill was again amended by averring that since the filing of the bill the appellant attaching creditors had obtained judgment in the attachment suits; and prayed that they might be enjoined from proceeding to obtain satisfaction of the same.

On the same day appellee made a motion for an injunction, restraining appellant creditors from proceeding further to obtain satisfaction of their respective judgments against the Supply Company until the further order of the court.

On the 22d day of September, 1898, a decree was rendered granting the injunction prayed for. The decree recited that the motion had been theretofore made, and that the said defendants had had "due notice of said motion."

On the 29th day of September, 1898, appellants without leave of the court filed an amendment to their answer "filed in said cause on the 28th day of March, 1898," averring additional new matter adopting the demurrers overruled by the court and containing grounds of demurrer to the bill as amended the same as those theretofore filed.

The answer filed March 28th, 1898, was not verified. The amendment to the answer filed September 29th, 1898, contained the following verification: "Before me, Leon Weil, in person appeared M. Cody, Jr., who, being duly sworn, deposes and says that he was at the date of the filing of the answer in the above entitled cause a member of the firm of Kennedy & Cody and is still a member of said firm, both members to which are made defendants to the bill filed in said cause. That the statements of facts contained in the answer to said bill, filed on the 24th day of March, 1898, and as amended by the answer to which this affidavit is attached, said answer being the joint and separate answer of all the defendants to said bill except the Builders & Painters

Supply Co. and C. E. Parks and Ira Virgin, are true except as to statements which appear therein to be made upon information and belief, and that as to the statements made as upon information and belief he verily believes the same to be true. That all the defendants who, with the members of affiant's firm have answered as aforesaid, are non-residents of the State of Alabama except affiant and his co-partner, J. M. Kennedy, and Virgin and Parks."

On the 1st day of October, 1898, appellant creditors made a motion to dismiss the bill for want of equity and to dissolve and discharge the injunction.

On the 4th day of October, 1898, appellee amended its bill by averring that subsequent to the replevy of the stock of goods by the Supply Company a receiver, appointed by decree of the city court of Montgomery, in Equity, had taken the stock of goods replevied from its possession; that the Supply Company had appealed from the decree appointing said receiver and superseded the same, and that said appeal was pending and undetermined. That the said stock of goods was largely in excess of the amount of said attachments, and that the suit in which said receiver was appointed was made by the averments of the bill therein subordinate to the lien of said attachments. That the replevy bonds had been returned forfeited by the sheriff and executions issued upon attachments of appellants against said Supply Company and its sureties upon replevy bonds. That said Supply Company was insolvent, and had no property subject to execution except said stock of goods taken by said receiver which had been levied upon under said attachments. Appellants objected to the allowance of this amendment.

Appellee made motion to strike amendment to answer filed September 29th, 1898, upon ground that same had been made without leave of court.

The case was submitted upon motion to allow amendment to bill, motion to dismiss bill for want of equity, motion to dissolve and to discharge injunction, and motion to strike answer from the file.

On the 8th day of October, 1898, a decree was rendered allowing amendment to bill filed October 4th,

.1898; overruling motion to dismiss bill for want of equity, motions to dissolve and to discharge injunction and demurrers of appellants, and allowed amendment to answer.

From this decree appellants, the attaching creditors, appeal and assign as error therein the overruling of their said demurrers and said motions.

It will be observed that there is no averment or charge of fraud on the part of the common debtor, The Builders & Painters Supply Co., nor of collusion between the attaching creditors and the said debtor. The equity of the bill is predicated solely upon the allegation that there existed no ground for the suing out of the attachment; that the ground stated in the affidavit for attachment was false, and that the same was sued out with the intent to hinder, delay, or defraud the other creditors of the common debtor, Builders & Painters Supply Co., and this allegation is based upon information and belief. The *bona fides* of indebtedness of the Supply Company to the respective attaching creditors, is not questioned. Reduced to its last analysis, the proposition presented by complainant's bill is, therefore, that whenever a creditor resorts to an attachment without the existence of a ground of attachment, and without probable cause for believing that a ground exists, another creditor of that debtor, may enjoin the attachment suit, and condemn the property levied on to his own debt. In the present case, the complainant and the attaching creditors respondents, are alike, simple contract creditors of the defendant debtor, Supply Co. In respect to the nature and character of their debts or demands, they stand upon an equal footing. It is clear that whatever right, if any, the complainant may have to seek relief in a court of equity, is dependent upon the statute, for without the statute a simple contract creditor could not maintain his bill in equity against his debtor on account of a fraudulent disposition by the debtor of his property, but must first reduce his demand to judgment. The statute which authorizes the filing of a bill in chancery by a creditor without a lien (§818, Code of 1896), is as follows: "A creditor without a lien may file a bill in chancery to discover or to subject

to the payment of his debt any property which has been fraudulently transferred or conveyed, or attempted to be fraudulently transferred or conveyed by his debtor." Section 2156 of the same Code, simply declares certain instances or cases which will support a bill filed under the authority of section 818 *supra*. Section 2156 reads as follows: "All conveyances or assignments in writing, or otherwise, of any estate or interest in real or personal property, and every charge upon the same, made with intent to hinder, delay or defraud creditors, purchasers or other persons of their lawful suits, damages, forfeitures, debts or demands; and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with the like intent, against the persons who are or may be so hindered, delayed or defrauded, their heirs, personal representatives and assigns, are void."

In *Lehman v. Meyer*, 67 Ala. 403, this court, having under consideration section 818 *supra*, said: "The real purpose of the statute is to dispense with, and abrogate wholly, the pre-existing law, which required that there should be a judgment at law, or if a judgment and the assets transferred fraudulently, were not subject to execution, that there should be an exhaustion of legal remedies, before the court would intervene to avoid fraudulent transfers and conveyances. That rule is blotted out, and any creditor may now, and has an equity of right to, invoke the assistance of the court to avoid such transfers or conveyances." Construing the same statute, in the case of *Evans v. Welch*, 63 Ala. 256, it was said: "The statutes have enlarged the jurisdiction of the court (chancery), and equitable assets may now be reached by a simple contract creditor, whenever the creditor is entitled to an attachment at law (Code of 1876, §§ 3846-3856) ; and "a creditor without a lien may file a bill in chancery to subject to the payment of his debt any property which has been fraudulently transferred or attempted to be fraudulently conveyed by his debtor.—Code, 1876, § 3886." "The purpose of this statute, its meaning and operation, cannot be misapprehended, and there is but little room for construction of it. As to property the debtor has *fraudulently*

*conveyed,* or *attempted to fraudulently convey,* the simple contract creditor is clothed with the same right to resort to a court of equity, entitled to the same remedy and relief, to which he or any other creditor having a lien was entitled before the statute. In other words, the necessity for a specific right, or a lien, to charge the property *fraudulently conveyed,* or attempted to be *fraudulently conveyed,* is dispensed with as a condition on which the jurisdiction of the court depends. Though prior to, and at the time of the filing of the bill, the creditor has no lien; yet when the bill is filed, and process served, a lien is acquired on the property conveyed, which will prevail over any subsequent alienation by the debtor or his grantee, and over the claims of subsequent judgment creditors, or of an assignee in bankruptcy."

It will be observed in the foregoing construction put by this court upon the statute, it is the fraudulent transfer or conveyance by the debtor that is referred to. We think it manifest from the language employed in these statutes, sections 818 and 2156, as well as from every case adjudicated by this court, in which reference has been made to the same, that it is the fraudulent conduct of the debtor, which, however, may be participated in by another, that the statutes are aimed at, and which confers the right upon the common creditor to seek relief in a court of chancery.

The contention by appellee that the attachments sued out by respondents against the Supply Co., the common debtor, is a *"suit commenced,"* within the provisions of section 2156, and gives the complainant the right to file its bill, we think is an interpretation too narrow and strained to be given that statute.

We assent to the proposition that the fraud condemned by the statute, is not limited to a formal transfer by the debtor of his property, but the transfer may be *informal, indirect,* through the agency of judicial proceedings, or otherwise; but in any event, there must be a participation by the debtor, whether active or passive it is immaterial, provided, however, he participates in the fraud; otherwise the complaining creditor has no right under the provisions of the statute to come into a court of equity.

It cannot by any fair and just construction of the first clause in section 2156, be contended that any one, other than the owner, of the "estate or interest in the real or personal property," who is necessarily the debtor, could *convey or assign, or create any charge upon the same* with intent to hinder, delay or defraud, etc. And likewise as to the second clause—"every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with like intent," etc. "Bond or other evidence of debt given," given by whom other than the debtor? "Decree or judgment suffered," suffered by whom other than the debtor? Or "suit commenced" "with like intent," commenced through the debtor's intent to hinder, delay or defraud, whether by himself or by another in collusion with him. Or in other words, the "suit commenced" intended by the statute, is a collusive one. Every act condemned by the statute, except that of "suit commenced," is one, by necessary implication under a reasonable construction, done by the debtor. The statute, as we have said, is aimed at the fraudulent conduct and acts of the debtor, and it would be unreasonable to give it a construction based upon a single expression contained therein, which though standing alone, might warrant the conclusion contended for by appellee's counsel, that would convert the remedy afforded by it to the creditor against the fraudulent debtor, into a possible means of oppression to the honest, innocent, unoffending debtor. If the language or expression "suit commenced" be eliminated from the statute, there would be nothing left in the statute to give the slightest support to a construction that would extend its provisions to a case, where the debtor himself was innocent of, and in nowise participating in, the act or acts denounced by the statute. The employment, therefore, of the expression "suit commenced" in the body of the act, we think was done with the object and purpose to cover and reach a phase of fraudulent action and conduct by a debtor not covered by the other provisions in the statute. We have been cited no case decided by this court that can be considered an authority supporting the views contended for by appellee. In each of the cases of *Cartwright v. Bamberger,* 90 Ala.

405; *Bank v. Laucheimer*, 102 Ala. 454; *Rice v. Less*, 105 Ala. 298; *Comer v. Heidelbach*, 109 Ala. 220; *Collier v. Wertheimer-Schwarz Shoe Co.*, 122 Ala. 320, which were common creditors' bills, there were averments of fraud and collusion by and between the debtor and the plaintiff in the "suit commenced," and which was assailed by the bill. In *Cawthorn v. Jones*, 73 Ala. 74, it was held that a bill by a simple contract-creditor was without equity where there was no conveyance or transfer by the debtor. In *Comer v. Heidelbach, supra,* p. 223, HARALSON, J., speaking for the court, says: "It is the collusive and fraudulent use that is attempted to be made of the process of the court in such cases, so opposed to the whole spirit and policy of the statute, which the law abhors and denounces." It is obvious and manifest that to constitute collusion more than one mind must be involved. Collusion is defined, a secret agreement and cooperation for a fraudulent purpose. Collusion between the plaintiff and defendant in the suit, is necessary to constitute it collusive as against other creditors. It follows, that in dealing with the term "suit commenced" as found in the statute, in bill by creditors to set aside such suits as fraudulent and collusive, the same principles obtain and govern, as in the case of an actual transfer or conveyance fraudulently made; the "suit commenced" if collusive, being the inception of that which is intended to eventuate in a transfer of the debtor's property, or in other words, being an *attempt* to fraudulently convey.

In *Adkins v. Bynum*, 109 Ala. 284, it was said by this court: "It is laid down in the books as a general proposition that the concurrence of three elements is essential in the constitution of a fraudulent conveyance; that is to say before a conveyance can be declared fraudulent it must be made to appear that there is (1) a creditor to be defrauded, (2) a debtor intending to defraud, and (3) a conveyance of property out of which the creditor could have realized his claim or some portion thereof." See also, Waite on Fraudulent Conveyances and Creditors' Bills, §§ 11 and 15. In the case at bar there is an absence of the second element above stated —"a debtor intending to defraud." There is no

averment in the bill of any fraud on the part of the common debtor, indeed, no pretence of anything other than innocence and honesty, and entire freedom from fraud and collusion with the attaching creditors.

There is another view, which confirms us in the construction we have given to these statutes. As is well said in argument by counsel for appellants, and we here quote from counsel's brief: "If there were no stronger argument against the contention of the complainant, it would seem that from the mere contemplation of the *results*, no court would adopt such a conclusion, unless driven to it by irrefutable logic or by such a weight of binding adjudications as could not be escaped. Here it is not denied that the plaintiffs in attachment had valid debts against the Supply Company, but the complaint is, the debtor had committed no act that justified the suing out of the attachment and seizure of its property. In such cases, ordinarily pursued, either by action at law upon the bond which (by statute) may be commenced without awaiting the termination of the suit; or (*after* the termination of the suit) by an action on the case against the plaintiff in attachment, a recovery might be had for expenses incurred in defending the attachment suit; for the value of the attached goods (if they had not been replevied), and in addition, punitive damages if the process was sued out maliciously and in the absence of probable cause. In such case, whether any ground existed for punitive damages, or whether the plaintiff was confined by the circumstances to damages for the mere wrongful resort to the process, he would, if he had levied upon property and realized from its sale, have had indemnity at least to the extent of the value of the property. Here, if the contention of complainant be sustained, another creditor may also recover the value of the property, and yet leave the attaching creditors liable on their bonds minus the indemnity. For it will be readily seen that no such privity exists between the complainant in this bill and the Supply Company as will enable the respondents, attaching creditors, to plead, in a suit on the bond, that the damages have already been recovered in this suit. Moreover, where an attaching creditor buys

in the attached property, or receives the proceeds, it is a credit on the defendant's indebtedness, regardless of whether the attachment was rightfully or wrongfully sued out. In such event, if the proposition of the bill be sound, the attaching creditor would lose first his debt; next, the value of the goods to the defendant in attachment, third, the value of the same goods, to any creditor of the defendant in attachment, who might file a bill alleging the attachment to have wrongfully been sued out—three recoveries for the same wrong.

"Under the construction which we have given, namely, that a creditor has no standing in a court of equity, without alleging some act done by the debtor, no such unjust results could follow. For if the attachment was collusively sued out; if—in the language of the decisions—the defendant in attachment was a 'consenting' debtor, he could never sue on the bond, nor could he maintain an action on the case for the wrongful suing out of the process. The creditor in equity could then recover what the debtor, in the absence of collusion, might have recovered; the value of the goods attached, and a double satisfaction (which it is said the law abhors) be averted."

To adopt the contention of the complainant would result in the announcement of another peculiar proposition, namely, that the mere fact that one person (a creditor) has wronged a debtor, who has himself been guilty of no wrong, arms another creditor with the right to take away the debtor's property from both the wrong-doer and the sufferer and condemn it to his own debt. Diminution of the debtor's estate by the wrongful act of the attaching creditor, and his consequent inability to satisfy the debts of other creditors, furnishes no just reason or argument to such creditors to resort to a court of equity. If such reasoning were sound, then diminution of the debtor's estate, by theft, would authorize the creditor to file his bill in equity and condemn the stolen goods to his debt, if the same could be found. Even if the statutes were of doubtful interpretation a court of equity would refuse to adopt a construction that would lead to results so unjust.

We, therefore, conclude that the bill as amended is

[Breitling v. Marx.]

without equity, and the court below erred in not dissolving the injunction and dismissing the bill; and a decree must here be rendered reversing the decree of the city court and dissolving the injunction and dismissing the bill for want of equity.

Reversed and rendered.