[Savage *et al.* v. Johnson.]

# Savage *et al. v.* Johnson.

125   673
s127   403
128   167

*Bill in Equity by Creditors to establish a Trust ex Maleficio.*

1. *Equity pleading and practice; finality of decree.*—A bill in equity was filed by a creditor on behalf of himself and all other creditors who would come in and propound their claims, against an alleged debtor and certain other parties who were alleged to have fraudulently obtained possession of the debtor's property. The purpose of the bill was to have the other parties defendant declared to be trustees *ex maleficio* of the property obtained from the debtor, and to have such property as was in their possession and the proceeds of the property disposed of subjected to the payment of complainant's debt. On submission of the cause "for decree on the pleadings and proof as noted by the clerk," it was decreed "that the complainant is entitled to the relief prayed for in his bill of complaint," and it was further decreed "that the defendants  *  *  *  are trustees *ex maleficio* of the chattels and choses in action belonging to the firm" of the alleged debtor, "and are hereby held to account to complainant for the value of the same at the time said defendants or either of them went into possession of the same." In said decree, a reference was ordered to be taken by the register for the stating of the account between the debtor and the complainant and the other defendants, who were held to be trustees *ex maleficio*, and directions were given for the holding of said reference. *Held*: that by reason of said decree failing to declare that there was an indebtedness due from the alleged debtor to the complainant, all the equities of the bill were not adjudged, and determined by said decree, and that, therefore, it was not such a final decree as would support an appeal. (HARALSON and DOWDELL, JJ., *dissenting.*)

2. *Same; right of creditor without lien to maintain bill under statute for fraud.*—In the absence of any fraudulent transfer or conveyance, or attempted fraudulent transfer or conveyance, by the debtor, his creditor without a lien cannot, under the statute, (Code, § 818), resort to a court of equity to reach and subject the property of said debtor of which he has been defrauded, or which has been wrongfully taken from him.

43

3. *Equity jurisdiction; right of creditor to maintain bill for fraud.*
A creditor without a lien who has neither a legal nor an equitable claim or title in or to the property of his debtor, cannot maintain a bill in equity to establish and enforce a trust for his benefit against one who has obtained possession of the property of his said debtor through fraud.

4. *Same; variance between averments of bill and proof.*—Where, in a bill in equity, filed by a creditor, the relief prayed for is based upon the complainant's right to recover as a judgment creditor of a mercantile firm, and the evidence introduced shows that the judgments were recovered not against said firm, but against the persons who composed said firm as individuals, together with other persons who were not members of said firm, there is a fatal variance between the averments and the proof, which precludes the granting of the relief prayed for.

APPEAL from Anniston City Court, in Equity.
Heard before the Hon. JAMES W. LAPSLEY.
On May 10th, 1894, T. L. Johnson filed a bill in the present case, in which he averred that during the summer of 1892, and prior to September 1st of said year, the firm of Pinson Bros. & Company, was engaged in general retail hardware business in the city of Gadsden; that said firm was composed of R. T. Pinson, Thos. H. Amberson, and M. L. Hicks; "that during the month of April, 1892, said firm of Pinson Bros. & Company became indebted to complainant in the sum of $2,650.00, for the purchase of a stock of hardware;" that of this amount, $500.00 was paid at the time of the purchase, and for the balance of the purchase price, ten promissory notes for $200.00 each, and one promissory note for $150.00 were signed by said R. T. Pinson, Thos. H. Amberson and M. L. Hicks; that said notes were not paid at maturity, and judgments were recovered thereon against the makers of said notes, which judgments were owned by the complainant at the time of the filing of the bill. It was then averred in the bill that prior to September 1, 1892, after one or more of the notes given by said Pinson, Amberson and Hicks, had become due and the makers thereof were sued, said Pinson became distrustful as to the management of the mercantile business, and fearing the result of said claims being reduced

to judgment, and apprehending that the stock of merchandise would be sold under execution issued, on said judgment, which would result in great loss to the owners of said goods, and meeting Jas. H. Savage, who was an attorney at law, he sought the advice of said Savage "as to the best course to be pursued in order that the stock of merchandise should not be sacrificed at forced sale by the sheriff, and the greatest possible amount should be realized therefrom, for the benefit of the creditors of said firm of Pinson Bros & Company, and said firm itself;" that said Savage advised Pinson that the best course to be taken was the appointment of a receiver by the court of chancery to take and sell such merchandise, and that "all persons interested would be fully protected by the fact that the receiver, when appointed, would be required to execute a bond with good security in a sum sufficient to recover everything that might come into his hands;" that Pinson agreed with Savage that this was the proper course to pursue and instructed him to take the necessary steps to procure the appointment of a receiver; that on or about the 1st day of September, 1892, the said J. H. Savage returned to Gadsden, accompanied by his brother, D .C. Savage, and informed the said R. T. Pinson, that said D. C. Savage had been appointed receiver for the property of the firm of Pinson Bros. & Co., and had qualified by giving the proper bond; that thereupon, said J. H. Savage and D. C. Savage, went to the store house occupied by Pinson Bros. & Company, and told those in charge of the business that they had been appointed receivers of said stock of merchandise, and had qualified by giving bond required, and demanded possession of all the stock of goods and all of the assets of said firm; that said M. L. Hicks, who was in charge of the store at the time, believed said statements to be true, and surrendered to said J. H. Savage and D. C. Savage all the assets of said firm, including the stock on hand, the books, accounts, notes, and other evidences of debt; that after the surrender of said stock of goods to J. H. Savage and D. C. Savage they assumed entire control, selling and disposing of as many of said notes as possible for cash, and collecting as much as they could on the notes and accounts of said firm; that to all

who made inquiry they represented themselves to be re-
ceivers, and were so considered and treated; that at the
time the goods and the assets of the firm were taken
possession of by said J. H. and D. C. Savage, they were
of the value of five or six thousand dollars; and that
notwithstanding, such large amount of goods, notes and
other assets which were obtained from said Pinson Bros.
& Company, by J. H. and D. C. Savage, ostensibly for the
benefit of the creditors of said firm, no part of said
goods or the money received or collected for same has
ever been accounted for or paid over to any one having
the right to receive the same by said J. H. Savage and
D. C. Savage, with the exception of a small amount paid
to the landlord for rent, and on account of judgment
recovered by the First National Bank against said firm.
It was then further averred in the bill that no proceed-
ings were ever had in any court for the appointment of a
receiver for the assets of Pinson Bros & Co., and no such
appointment had ever in fact been made, but that the
said Jas. H. and D. C. Savage, made their false and
fraudulent representations, as to the appointment of
receivers, and performed their acts of control over the
assets of said firm for the express purpose of hindering,
delaying and defrauding complainant and the First Na-
tional Bank of Gadsden, in the collection of debts which
were alleged to be due to them from the firm of Pinson
Bros & Co. R. T. Pinson, M. L. Hicks, Thos. H. Amber-
son, J. H. Savage and D. C. Savage were parties defend-
ant, and the prayer of the bill was that J. H. Savage and
D. C. Savage be decreed to be trutees *ex maleficio,* for the
benefit of the complainants and the other creditors of
Pinson Bros. & Company, as to the property of said firm,
which went into the hands of said Savages, and that they
both be required to account for the value thereof, and
that reference be had to the Clerk of the City Court of
Anniston to ascertain the value of said property, and al-
so the amount due to complainant from Pinson, Hicks
and Amberson, and that the said Jas. H. Savage and D.
C. Savage be required to pay into court the value of the
property so ascertained to have been obtained by them,
with interest, or at least a sufficient amount to satisfy

the debts of the complainant and such other creditors
as may be made parties to the bill.    There was also a
prayer for general relief.

The other facts of the case necessary to an understand-
ing of the decision on the present appeal are sufficiently
stated in the opinion.

On the submission of the cause, on the pleading and
proof, a decree was rendered on June 6, 1895, in which
it was declared that the complainant was entitled to the
relief prayed for in his bill of complaint.    This decree
is copied in the opinion.

In accordance with the order of the court, as con-
tained in the decree of June 6, 1895, the register held a
reference, and upon the coming in of his report, the
judge of said court on June 3d, 1896, rendered a further
decree.    In this decree all of the exceptions to the find-
ing of the clerk upon the reference were over-ruled with
the exception of one.    The court then proceeded to cor-
rect the report of the register as to the balance, with
which J. H. and D. C. Savage were chargeable, and
made a statement thereof in his decree, showing such
balance to be $588.22.    The court then proceeded as
follows: "It is, therefore, ascertained, adjudged and de-
creed that the amount of the balance of the assets of
the said firm of Pinson Bros. & Co., with which said de-
fendants, J. H. and D. C. Savage, are chargeable as trus-
tees is the sum of five hundred and eighty-eight 22-100
dollars.

"And it is ordered, adjudged and decreed that the said
complainant have and recover of the said James H. Sav-
age and D. C. Savage, the said sum of five hundred and
eighty-eight 22-100 dollars, with interest from Novem-
ber 1st, 1895, and with the costs in this behalf expended.
For which let execution issue."

From this decree, the defendants, Jas. H. Savage and
D. C. Savage, prosecute the present appeal.    The first six
assignments of error by the appellants were based upon
the decree rendered on June 6, 1895, and the remaining
eight assignments of error were based upon the decree
rendered on June 3d, 1896.    In this court, there was a
motion made to strike the first six assignments of error
on the ground that they related to a final decree which

was rendered more than twelve months before the appeal in the case was taken.

THOS. W. COLEMAN, JR., EDWIN F. JONES and GORDON MACDONALD, for appellants.—The decree of June 6, 1895, was not a final decree and would not, therefore, support an appeal. In the case of *Walker v. Crawford,* 70 Ala. 567, the principle is laid down that a decree ascertaining the rights of the parties as to the substantial matters of controversy, is a final decree, though there may be a reference to the register of matters of account, which are merely incidental or dependent upon the relief the decree grants. To the same effect are the following cases: *Kimbrell v. Rogers,* 90 Ala. 339; *Stringfellow v. Ivie,* 73 Ala. 209; *Garner v. Pruitt,* 32 Ala. 13. But if the matter referred to the clerk is one on which the equity of the bill depends, and if on his finding, it could develop that complainant was not entitled to relief, the decree is not final. An inspection of the decree rendered June 6, 1895, shows that there were matters referred to the register, in the ascertainment of which it might develop that the complainant was not entitled to the relief prayed for.

Thos. L. Johnson was not a creditor of the firm of Pinson Bros. & Co. but merely of the individuals, and if it be conceded that the bill contains sufficient averments to make the Savages trustees for creditors of the firm, it does not make them trustees for complainant. His judgments which he seeks to collect, were not leins on the stock and could not have been levied on the property. He could only reach what was left after firm's affairs were settled and firm's creditors paid.—*Crosswell v. Lehman,* 54 Ala. 363; *Evans v. Winston,* 74 Ala. 349; *Farley v. Moog,* 79 Ala. 148; *Daniel v. Owen,* 70 Ala. 297; *Hunter v. Austin,* 19 So. Rep. 511.

The present bill can not be maintained under section 818 of the Code. This section provides that a creditor without a lien may file a bill in chancery to discover or subject to the payment of his debt, any property which has been fraudulently conveyed or transferred, or attempted to be fraudulently conveyed by his debtor. The bill in this case does not allege any fraudulent convey-

ance or attempted fraudulent conveyance by any body, and allegation and proof of this fact is essential to any relief under this section.—*O'Connor M. & M. Co. v. Coosa Fur. Co.*, 95 Ala. 614. The debtor must make the transfer.—*Cawthorn v. Jones*, 73 Ala. 82. The debtor himself must be made a party defendant if he be living and the title remained in him.—*Harris v. Moore*, 72 Ala. 509; *Powe v. McLeod*, 76 Ala. 418. The bill then not alleging any transfer fraudulent or otherwise by the firm of Pinson Bros. & Company, who were the undoubted owners of the goods, and the firm not being a party to the bill, such a bill is of necessity not well filed under this section.—*Mobile City L. & F. Co. v. Golden*, 110 Ala. 376; *Lehman v. Meyer*, 67 Ala. 401; *Evans v. Welch*, 63 Ala. 250; 2 Beach Mod. Eq. Juris, § 890.

BLACKWELL & KEITH, *contra.*—The main question in this case is whether the decree rendered June 6, 1895, was a final decree. The equities of the case were adjudged in said decree and everything that was necessary to authorize the complainant to the relief prayed for was adjudged therein. This gave said decree finality.—*DeBardeleben v. Stoudenmire*, 82 Ala. 574; *Voltz v. Voltz*, 75 Ala. 555; *Sayre v. Adams*, 76 Ala. 509.

DOWDELL, J.—The appeal in this case was taken on the 18th of June, 1896, from a decree of the city court of Anniston rendered June 3d, 1896, confirming the report of the register. The original decree, under which this reference was held and report made, was rendered on June 6, 1895. This decree was rendered upon a final submission of the cause on the pleadings and proof, and by its express terms settles and determines all of the equities of the bill, leaving nothing to be done but a simple reference to the register to state an account between the parties. Under the authority of *Garry & Welpin et al. v. Jenkins, Moore & Co. et al.*, 109 Ala. 471, and the cases there cited, the decree of June 6th, 1895, is a final decree in every essential and from which an appeal would lie.

The first six assignments of error relate to this decree, or to interlocutory orders prior thereto, and the appeal

having been taken more than twelve months after its rendition, the motion to strike these assignments must prevail.

The 7th, 8th, 9th and 10th assignments of error are to the effect that the court erred in the decree of June 3, 1896, in holding Jas. H. and D. C. Savage as trustees for complainant. Upon an inspection of the record we find that this question was determined in the final decree on June 6th, 1895.

The 11th and 12th assignments relate to the decree of June 3d, 1896, and challenges the correctness of the decree in overruling appellants' "last exception to the register's report, excepting to his report finding complainant's debt to be $2,324." This debt of $2,324 was ascertained to be balance due complainant by Pinson and others, and not by the appellants. The defendants Pinson, Hicks and Amberson, the judgment debtors, made no objection to this finding, and it is difficult to understand how the appellants Savage can complain, when even, if the credits contended for by these appellants as proper credits on the debt of Pinson and others to complainant, were allowed, they would not reduce the amount below that for which these appellants are held liable and accountable by the decree as trustees, etc.

We find no error in the record, and the decree of the city court is affirmed.

## On Application for Rehearing.

Upon a further consideration of this case, the majority of the court is of the opinion that the decree of the chancellor of June 6th, 1895, is not a final decree, holding that all of the equities of the bill are not adjudged and determined by said decree, inasmuch as it does not decree an indebtedness by the respondents Pinson Bros. & Co. to the complainant. The writer, however, is of a different opinion, and for the following reasons: The bill avers a transaction between the complainant and Pinson Bros. & Company wherein the complainant sold to said Pinson Bros & Company a certain stock of hardware in the city of Gadsden at and for a given price; that five hundred dollars of the purchase price was paid in

cash, and for the balance the said Pinson Bros. & Company executed to the complainant their eleven promissory notes; that these notes were subsequently reduced to judgments against the said Pinson Bros. & Co. and remain unsatisfied, and are held by said complainant. These averments in the bill were confessed by the respondents Pinson Bros. & Company. The answer of respondent, D. C. Savage "denies the statements contained in paragraph two of the bill as therein stated." The above averments are set out in said paragraph two. The answer of respondent Jas. H. Savage is evasive in its denial, in that it "denies that *all* of said judgments remain unsatisfied," instead of denying that *any* of said judgments remain unsatisfied. Testimony was taken, and as shown by the record the cause was submitted for final decree on the pleadings and proof. Transcripts of these judgments were in evidence, as shown by the note of testimony, and evidence that the same remained unsatisfied. On this state of the case the decree in question was based. The decree reads as follows: "This cause coming on to be heard at the present term was submitted for decree on the pleadings and proof as noted by the clerk, and on consideration, it is ordered, adjudged and decreed that the complainant is entitled to the relief prayed for in his bill of complaint." The decree then proceeds with particularity to ascertain and determine the status of the respondents Savage: "It is further ordered, adjudged and decreed that the defendants, James H. Savage and D. C. Savage, are trustees *ex maleficio* of the stock of goods, chattels, and choses in action belonging to the firm of Pinson Bros. & Co., which went into their hands, or either of them, and are hereby held to account to complainant for the value of the same at the time said defendants, or either of them, went into possession of the same." "It is further ordered, adjudged and decreed, that the stating of the account be, and the same is hereby referred to the clerk of this court." "The said clerk will charge the defendants, Jas. H. Savage and D. C. Savage, with the value of the stock of goods, chattels and the choses in action at the time the same went into their hands, together with interest on said amount from said date, and which

belonged to the firm of Pinson Bros. & Co." "He will give credit to said defendants for all such payments as he may find to have been made by said defendants, or either of them, on any claim which he may find to be a lien on said property, at the time said defendants went into possession thereof." "He will also allow interest on such payments from the date of each." "On the hearing of this reference and the stating of the account, the clerk will receive all relevant and competent testimony, whether oral or written, including any relevant testimony already of record in the cause, touching the value of said stock of goods, chattels and choses in action, and any payment to which these defendants may be entitled, as indicated hereinbefore in this decree." "The clerk will proceed to execute this reference at his earliest convenience and make report of his action to this court." "The clerk will further ascertain and report the amount due complainant on his several debts against said Pinson Bros. & Co., or defendant R. T. Pinson, F. H. Amberson and M. L. Hicks, arising out of the transaction of the purchase of said stock of goods by them from complainant, at the time Pinson Bros. & Co. began business, as set forth in the bill of complaint."

The equities of the complainant's bill are predicated upon the complainant's debt against Pinson Bros. & Co., arising out of the transaction of the sale of the stock of goods by complainant to said Pinson Bros. & Co., which said debt or claim was reduced to judgment, and the wrongful taking of such stock of goods by the defendants Savage in such manner as to constitute them trustees. The decree with particularity and in express terms adjudges the Savages trustees as to said stock of goods. Does it determine the other equity, *i. e.*, the debt of complainant against Pinson Bros. & Co.? It must be conceded that without this debt, the complainant would not be entitled to the relief prayed for, and his bill would have been dismissed. The decree here recites: "on consideration it is ordered, adjudged and decreed that complainant is entitled to the relief prayed for in his bill of complaint." This is not a mere opinion of the chancellor, but a solemn decree of the court. Nor is it conditional, nor qualified by anything subsequently oc-

curring in the decree ordering a reference for the statement of an account, as I understand and construe the order for an accounting. The court must have ascertained the existence of a debt as averred by the complainant, before it could have solemnly adjudged that he was entitled to the relief prayed for in his bill. The answer of the respondent, D. C. Savage, avers that he applied the proceeds arising from the sale of the stock of goods, except one hundred and seventy dollars, under the direction of Pinson, to the payment of certain claims against Pinson Bros. & Co., other than complainant's, and this one hundred and seventy dollars he admits to be still in his hands. The decree for the stating of the account directs that the clerk charge the defendants Savage with the value of the stock of goods, chattels and choses in action at the time the same went into their possession, together with interest on the amount from that date, and to allow them credit for such payments as he may find to have been made by said defendants on any claim which he may find to be a lien on said property at the time said defendants went into possession thereof. And for this purpose he was authorized to hear all legal and competent evidence that parties might offer. The hearing of evidence by the clerk is limited by the terms of the decree to the statement of an account against the Savages for the value of the goods, chattels, choses in action, together with interest, and the accrediting them with payments made by them on a certain class of claims. The decree then directs the clerk to ascertain and report the *amount* due complainant on his *several debts,* not whether anything be due or not. Indebtedness to complainant by Pinson Bros & Co. *vel non* is not referred by the decree. This had already been determined by the court. The clerk was not authorized by the decree to hear any evidence on this question. All that he could do under this decree to ascertain and report the *"amount due on the several debts* of the complainant against Pinson Bros. & Co.,"* was to compute the interest on the *several judgments,* and report to the court the total of principal and interest on the same. Moreover, the court in this decree particularly describes these *several debts* as "arising out of the

transaction of the purchase of said stock of goods by them (Pinson Bros. & Co.) from the complainant, at the time Pinson Bros & Co. began business *as set forth in the bill of complaint."* It seems from this that the decree not only determines the question of indebtedness *vel non* by Pinson Bros. & Co. to complainant, but particularizes it as one arising out of a certain transaction as set forth in the bill of complaint. It seems clear that the equities upon which the bill is predicated were finally determined and adjudicated in this decree.

The defendant D. C. Savage confessed in his answer that he had in his possession one hundred and seventy-five dollars, proceeds of the sale of the said goods by him, and to this extent his liability as a trustee under the decree was fixed, and the stating of an account by the clerk under the decree, would necessarily charge the Savages to this extent, if not more.

In *Garry & Welpin v. Jenkins, Moore & Co.,* 109 Ala. 471, so far as appears from the statement of facts, the decree of the chancellor did not in terms adjudge that there was any debt due the complainants, but this court said in passing upon the question of the finality of the decree in that case: "All that remained to be done was a reference to the register to ascertain the amounts of the debts of the complainants, the existence of their debts being confessed, and of the creditors coming in under the bill, and of the precise amount of Drennen's liability as trustee *in invitum* of the proceeds of the property sold by him, and the making of orders and decrees necessary to the collection of such amount and its distribution among the creditors—a mere matter of accounting and settling the *amounts* to be paid and received under the decree of June 29th, whereby the creditors' rights to demand and receive, and Drennen's liability and duty to account and pay, were fully and finally adjudged and decreed." And in support of this, after adding, "under all the authorities this" (the decree of June 29th) "was a final decree," Brickell's Digest is cited, where it is said: "When a decree is final upon the merits —adjudging the equities and settling the rights of the parties—an appeal will lie under the statute. If a decree possesses these properties, it is immaterial, so far

as affects the right of appeal, that the cause is still in progress, awaiting further proceedings necessary to entitle the successful party to the possession and enjoyment of the rights adjudged to him," citing numerous authorities which I need not here recapitulate. The cases of *Garner v. Prewett,* 32 Ala. 13, *Walker v. Crawford,* 70 Ala. 567, and *Kimbrell v. Rogers,* 90 Ala. 339, were differentiated from the case of *Garry & Welpin v. Jenkins, Moore & Co., supra,* in that, in those cases the question of indebtedness *vel non* being referred to the register, to be by him ascertained and reported to the court, left an essential equity in the case between the parties undetermined by the decree. And we say for the same reason they can be differentiated from the case at bar. In *Garry & Welpin v. Jenkins, Moore & Co.,* the decree was rendered upon the submission on the *pleadings* and *proof* as noted by the register. Likewise in the case at bar, the decree was upon the submission on the pleadings and proof as noted by the clerk. In the former case, in passing upon the nature and character of the decree as to the question of its being a final decree such as would support an appeal, the decree not in terms adjudging that complainant had a debt, resort was had by this court to the pleadings upon which the submission was had in determining that decree was final. If resort can be had to the pleadings upon which the cause was submitted in connection with the proof, to determine the nature of the decree, as to whether it be final, it may be asked why resort may not be had to the proof upon which the submission was had in connection with the pleading, for the same purpose? Both the pleadings and the proof were before the chancellor for consideration, and both considered by him, and upon such consideration he solemnly orders, adjudges and decrees that the complainant is entitled to the relief prayed for in his bill; or, in other words, that the complainant has a debt, otherwise he would not be entitled to relief. I think the principle laid down in *Garry & Welpin, supra,* is correct, and I think this case comes within its influence. And I think what was there said is applicable here, viz.: "In the present case no equity remained undetermined after the decree of June 29th, 1892. Com-

plainants' debts were not denied, but expressly admitted." (In the case at bar, complainant's debts were denied, but were proven). "They prayed for specific relief, and the decree determined they were entitled to it. All the rights and liabilities of all parties were adjudged by the decree; and it only, remained to ascertain amounts of admitted indebtedness" (here amounts of proven indebtedness) "and the amount for which Drennen" (here Savage) "was liable as trustee *in invitum.*" If the decree had formally recited, "upon consideration it is adjudged that the complainant has several debts against the said Pinson Bros. & Co," followed by an order of reference to the clerk to ascertain and report to the court the amount due the complainant on his said several debts, it would not be questioned but that such a decree would be a complete adjudication of indebtedness *vel non* from Pinson Bros. & Co. to the complainant. In effect and substance, this was the decree of the court. The adjudication by the court of complaint's debts is implied in the form of the decree, and the language used and by a reasonable construction of the decree, the conclusion as to this implication is unavoidable. A court of equity looks more to substance than to form.

HARALSON, J., concurs with the writer in the foregoing view as to the character of the decree in question, but as the majority of the court are of the contrary opinion, holding that the decree is interlocutory and not final, it follows that the appellee's motion to strike the assignments of error based upon this decree and the orders of the court anterior thereto, must be overruled.

This necessitates a consideration of those assignments of error. And the first question that is presented, and, we might say, the vital question, goes to the equity of complainant's bill.

The bill purports to be a general creditors' bill, filed on behalf of the complainant as a creditor of the firm or partnership of Pinson Bros. & Co., and on behalf of such other creditors as may see proper to join in the bill. By the averments in this bill it is shown that the respondents, James H. Savage and D. C. Savage falsely and fraudulently represented and pretended to Pinson

Bros. & Co. that D. C. Savage had been appointed by the chancery court upon a bill filed for that purpose, receiver for said Pinson Bros. & Co., and by means of such false and fraudulent pretenses and representations, obtained from said Pinson Bros. & Co. the possession of their stock of merchandise, books and accounts, choses in action, and all of the personal assets of said firm. It is not charged that any conveyance was made by Pinson Bros. & Co. to said D. C. Savage, or that there was any collusion between Pinson Bros. & Co. and the Savages, nor that Pinson Bros. & Co. in anywise participated in the alleged fraud of the Savages, but on the contrary, it is made to appear that Pinson Bros. & Co. were wholly innocent of any wrong, or of any intent to injure or defraud their creditors, and in fact, were the innocent and unsuspecting victims of the alleged fraud practiced and perpetrated by the Savages. The prayer of the bill is that the said James H. and D. C. Savage be decreed trustees *ex maleficio,* and be held to an accounting for the property of said Pinson Bros. & Co., which they so fraudulently obtained possession of. It is not pretended that the bill is filed under either section 814 or 819 of the Code, for there is no averment of the issuance and return of an execution not satisfied as against the defendants, Pinson Bros. & Co., nor is any discovery sought. Can it be maintained under section 818? That section (818 of Code, 1896) reads as follows: "A creditor without a lien may file a bill in chancery to discover or to subject to the payment of his debt any property which has been fraudulently transferred or conveyed, or attempted to be fraudulently transferred or conveyed by the debtor."

As to what kind of fraud is within the statute, it is said in Bump on Fraudulent Conveyances (4th ed.), § 20: "Nor is a fraud which is directed against the debtor and not against his creditors within the statute. The creditors of a party defrauded have no right, even though the fraud has the effect to diminish his means of paying them, to look into such fraud or unravel it. It is for him and him alone to do so, and if he chooses to acquiesce in the fraud, or suffers himself to be concluded of his right to investigate or undo it; his creditors must

[Savage *et al.* v. Johnson.]

be content to abide by the legal rights remaining in him. There is a manifest distinction between a fraud upon the debtor and a fraud upon creditors."

The bill in this case does not allege any fraudulent transfer or conveyance, nor any attempted fraudulent transfer or conveyance by the debtor, and allegation and proof of this fact is essential to any relief under section 818 of the Code. It is immaterial what shape or form the fraudulent transfer may assume, whether by the direct act of the debtor, or by his collusion with another suffering it to be done through some legal proceeding, but it is essential that the debtor in some way participate knowingly in the fraud.

In the case of *Builders and Painters Supply Co. v. First National Bank,* 123 Ala. 203; 25 So. Rep. 311, the above section received our consideration and construction. In that case the bill was a creditors' bill and was filed for the purpose of setting aside an alleged fraudulent attachment against the common debtor, but no fraud or collusion was charged against the debtor, and it was held by this court that the bill was without equity. There, as in this case, the debtor, by the averments of the bill, was innocent of any wrong of fraud, and was shown to be the victim of the alleged fraud. In determining the equity of the bill by reference to this statute, the controlling principle in the two cases is the same. And that is, that in the absence of any fraudulent transfer or conveyance or attempted fraudulent transfer or conveyance by the debtor, a creditor without a lien cannot resort to a court of equity to reach and subject property of the debtor of which the debtor has been defrauded, or which has been wrongfully taken from him.

In the case of the *Builders and Painters Supply Co. v. First National Bank, supra,* other decisions by this court bearing on this question were there cited and commented on. We think it clear that the bill in this case can derive no vitality by reason of any statute of this State. Can the bill find support in any recognized common law principle of equity jurisprudence? It cannot be denied that the complainant's demand here sought to be enforced is a purely legal demand. Nor can there be any doubt under the statutes and decisions

in this State of the right of the creditor to have his execution levied upon the property of the partnership debtor. There is no averment in the bill that any execution had ever been issued on any judgment against the partnership of Pinson Bros. & Co. and a return thereof not satisfied, nor any excuse given for a failure to issue execution. Where the demand sought to be enforced is a purely legal demand, in order to give a court of equity jurisdiction, the bill should show that the complainant had exhausted his legal remedies, or show some good reason for his failure to do so.—3 Pomeroy's Eq. Jur., § 1415, where authorities are collated.

While the averments of the bill may be sufficient to constitute the Savages trustees *ex maleficio* as to Pinson Bros. & Co., will this fact authorize and support a bill by a creditor without a lien of Pinson Bros. & Co. to enforce such a trust? There is no averment in the bill that a judgment against Pinson Bros. & Co. had ever been perfected into a lien by execution placed in the hands of the sheriff, or by registering under the statute. The complainant being, then, a creditor without a lien, and showing no other right or claim in or to the property of Pinson Bros. & Co. taken by Savage, does not show such a relation as would authorize a court of equity to establish and enforce a trust *ex malificio* for his benefit as against Savage. In Perry on Trusts, § 245, the principle is stated: "A person may become a trustee by construction by intermeddling with and assuming the management of property without authority. Such persons are trustees *de son tort*, as persons who assume to deal with a deceased person's estate without authority are administrators *de son tort*." A number of authorities are cited in note "a" to this section, but in most of them the bill was filed by the person whose legal title was violated or from whose possession the property was taken, or by some one holding in privity with such person, such as an heir. We have been unable to find a case where a party with neither a legal nor equitable claim or title in the property could have a bill to establish and enforce a trust for his benefit against one obtaining possession of the property from another through fraud. There are, however, cases to be found

44

where the courts have held that where a person, through fraud and deceit obtains possession of property under a promise that it will be held for the benefit of another, that the law raises a trust for the benefit of such other person and which he may enforce. The most common illustration of this principle is found in that class of cases where a party has procured a will or deed to be made in his favor under a fraudulent promise that the property would be received and applied to the benefit of a third person. It is thus stated in Perry on Trusts, § 181: "If a person by his promises, or by any fraudulent conduct, with a view to his own profit, prevents a deed or will from being made in favor of a third person, and the property intended for such third person afterwards comes to him who fraudulently prevented the execution of the will or deed, he will be held to be a trustee for the person defrauded, to the extent of the interest intended for him." In Pomeroy's Eq Jur., § 1053, the principle is thus stated: "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealment, or through undue influence, duress, taking advantage of one's weakness or necessities or through any other similar means, or under any other similar circumstances, which render it unconscionable for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein." The difficulty in the application of this principle in the case before us rests in the fact that in the first place under the alleged fraud, the legal title to the property never passed out of Pinson Bros. & Co., and in the second place it is not shown that the complainant is equitably entitled to the same. But, on the contrary, the facts as stated, show that Pinson Bros. & Co. are the persons legally and equitably entitled to the property, and therefore to hold the wrongdoer, as a trustee *in invitum* to an accounting. It is not so much a question here, of a trust *ex malificio*, but who are the

[Savage *et al.* v. Johnson.]

beneficiaries and entitled to enforce it. The alleged fraud in this case being that Savage represented himself as having been appointed receiver repels the suggestion of any promise on the part of Savage that he would hold the property for the benefit of the complainant. The office and duty of a receiver is to preserve the property coming into his custody as such, to be disposed of by the decree of the court, of which he is an officer.

In the foregoing discussion we have treated the case upon the theory of the complainant's being a creditor of the firm of Pinson Bros. & Company, whose property is alleged to have been taken by the wrong-doer. Coming to the proof in the case there is a fatal objection to any right of rcovery by the complainant under the bill. The theory of the bill is based upon the complainant's right to recover as a judgment creditor of the firm of Pinson Bros. & Company, and the judgments offered in evidence are judgments not against Pinson Bros. & Company, but against the persons who compose the firm as individuals together with two other persons not members of the firm. We are, therefore, of the opinion that the court below erred in the decree rendered in favor of the complainant, and the decree must be reversed and a decree will be here rendered, dismissing complainant's bill.

Reversed and rendered.